IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GERARD PUANA, ET AL.,<br><br>  Plaintiffs,<br><br>  vs.<br><br>KATHERINE K. KEALOHA, ET AL.,<br><br>  Defendants. | CIVIL NO. 16-00659 LEK-WRP<br><br>ORDER DENYING DEFENDANT DEREK HAHN'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AND THE JOINDER THERETO |

ORDER DENYING DEFENDANT DEREK HAHN'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AND THE JOINDER THERETO

Before the Court is Defendant Derek Hahn's Motion to Disqualify Plaintiffs' Counsel (Motion), which seeks to disqualify Plaintiffs' counsel from representing the Plaintiffs in this action because such representation would purportedly violate the Hawai'i Rules of Professional Conduct (HRPC). See ECF No. 165. Defendant City and County of Honolulu filed a Joinder in the Motion. See ECF No. 168. Plaintiffs filed their Opposition on June 18, 2021. See ECF No. 182. Defendant Hahn filed his Reply on July 2, 2021. See ECF No. 196. Defendant Hahn filed an additional exhibit in support of his Reply on July 7, 2021. See ECF No. 199. The Court finds the Motion suitable for disposition without a hearing pursuant to the Local Rules of Practice for the United States District Court for the District of Hawaii Rule 7.1(c) and VACATES the hearing set for July 15,

2021.

After careful consideration of the record in this action and the relevant legal authority, the Court DENIES the Motion and the Joinder thereto.

BACKGROUND

Plaintiff Gerard K. Puana and Ricky L. Hartsell, as Trustee of the Florence M. Puana Trust, filed their First Amended Complaint against Katherine P. Kealoha, Louis M. Kealoha, Dona Leong, Minh-Hung Nguyen, Daniel Sellers, Derek Wayne Hahn, Nial Silva, Walter Calistro, and Dru Akagi, for violation of Plaintiffs' constitutional rights related to Plaintiff Gerard K. Puana's arrest and prosecution for an alleged mailbox theft and related to a reverse mortgage on the home of Florence M. Puana.  See ECF No. 80.  The City and County of Honolulu was substituted as Defendant for all official capacity claims alleged in the First Amended Complaint on February 17, 2021.  See ECF No. 118.  Plaintiffs have been given leave to file a Second Amended Complaint no later than August 4, 2021.  See ECF No. 172.

In the present Motion, Defendant Hahn argues that Plaintiffs' counsel, Eric Seitz, Esq., and his law firm must be disqualified from representing Plaintiffs based on his prior relationship with Defendant Hahn.  See ECF No. 165; ECF No. 168.

Although the parties disagree regarding the nature of the relationship

between Mr. Seitz and Defendant Hahn, the following facts are undisputed. Sometime in 2016, Mr. Seitz was contacted by telephone by another attorney, Thomas Otake, Esq., about possibly representing Defendant Hahn in the federal investigation that eventually lead to Defendant Hahn's conviction in the criminal case related to this civil litigation.  See ECF No. 165-3, Decl. of Derek Hahn, ¶¶ 9, 11; ECF No. 182-1, Decl. of Eric Seitz, ¶¶ 4-7.  Mr. Seitz and Defendant Hahn spoke on the telephone at least once regarding Mr. Seitz representing Defendant Hahn in the federal investigation.  See ECF No. 165-3, Decl. of Derek Hahn, ¶¶ 2-4; ECF No. 182-1, Decl. of Eric Seitz, ¶¶ 9-11.  Neither Mr. Otake nor Defendant Hahn provided any documents to Mr. Seitz related to the criminal investigation. Defendant Hahn did not sign a written agreement with Mr. Seitz and did not make any payment arrangements with Mr. Seitz.  Mr. Seitz did not appear on behalf of Defendant Hahn for any proceedings related to the criminal investigation. Plaintiffs, represented by Mr. Seitz, filed the Complaint in this action on December 14, 2016.  See ECF No. 1.

In the declarations provided by Defendant Hahn and Mr. Seitz, they provide conflicting accounts about the nature and extent of the discussions between them.  Specifically, Defendant Hahn states that he spoke with Seitz on "several other occasions" in addition to the first call about possible representation.  See ECF No. 165-3 ¶ 3, 14.  Defendant Hahn states that Mr. Seitz instructed him to

waive his attorney-client privilege with Mr. Otake so that Mr. Seitz and Mr. Otake could talk about his case. See id. ¶ 9. Defendant Hahn states that he gave Mr. Otake permission to talk to Mr. Seitz and that Mr. Otake disclosed "more information" about the federal investigation to Mr. Seitz. See id. ¶¶ 10-11.

Defendant Hahn further states that he sent Mr. Seitz a letter on September 26, 2016. See id. ¶ 13. In that letter, Defendant Hahn wrote "thank you for taking the time to return my phone call" and that he followed Mr. Seitz's instructions to contact Mr. Otake to have Mr. Otake speak with Mr. Seitz about the case. ECF No. 165-4. The letter states that Defendant Hahn has "tried to search out a back up attorney option if [Mr. Seitz] chose[s] not to meet with [him]" and that he has "four attorneys [he] would consider if [Mr. Seitz] do[es] not accept [him]." Id. In his Declaration, Defendant Hahn states that Mr. Seitz then called Defendant Hahn and told Defendant Hahn that he would represent him. See ECF No. 164-4 ¶ 14. Defendant Hahn states that Mr. Seitz told him that he discussed the case with Mr. Otake and would be "taking over" his case. See id. Defendant Hahn states that he confirmed with Mr. Otake that Mr. Seitz would be taking over his case. Id. ¶ 15. Defendant Hahn states that in December 2016 he was contacted by the Federal Bureau of Investigation and Defendant Hahn referred them to Mr. Seitz, who then said that he was not Defendant Hahn's lawyer. See id. ¶¶ 16-19. With his Reply, Defendant Hahn submitted cell phone records showing five

4

outgoing calls to Mr. Seitz's law firm's main number: September 19, 2016 (6 minutes); September 20, 2016 (1 minute); September 23, 2016 (2 minutes); October 17, 2016 (1 minute); and October 18, 2016 (1 minute). See ECF No. 196-3. Additionally, the cell phone records show five incoming calls from Mr. Seitz's law firm's main number: September 20, 2016 (3 minutes); October 5, 2016 (2 minutes); October 17, 2016 (3 minutes); October 19, 2016 (3 minutes); and December 16, 2016 (3 minutes). See id.

In contrast, Mr. Seitz's Declaration states that he had "one brief telephone call" with Mr. Otake about the case and told Mr. Otake that he was not familiar with the investigation, had no conflicts at that time, and would be willing to speak with Defendant Hahn. See ECF No. 182-1 ¶ 7. Mr. Seitz states that Mr. Otake did not provide "any information" about the investigation. See id. ¶ 8. Mr. Seitz states that he told Defendant Hahn during their one "brief" call that he "might be available" to represent him and would be willing to talk further "when something actually happened for which he required legal advice and representation." Id. ¶¶ 9-11. Mr. Seitz states that during this call, Defendant Hahn "provided no information about the matter or his potential involvement and did not ask for or receive any legal advice." Id. ¶ 11. Mr. Seitz states that before he heard back from Defendant Hahn, he was retained by the Puanas. See id. ¶ 12.

In support of their Opposition, Plaintiffs also submitted the

5

declaration of Mr. Otake. See ECF No. 182-2. Mr. Otake states that he "spoke by telephone with Mr. Seitz" to try to "facilitate a consultation" between Mr. Seitz and Defendant Hahn. Id. ¶ 7. During this call, Mr. Otake "inquire[d] whether [Mr. Seitz] had any conflict of interests and whether he might be available to assist and represent Mr. Hahn" and "explained in not much detail that the matter involved a federal grand jury proceeding and possible subpoena." Id. ¶¶ 7-8. Mr. Otake states that "Mr. Seitz stated that he had no conflict and that he would make himself available to talk to Mr. Hahn if Mr. Hahn wanted to contact him." Id. ¶ 8. Mr. Otake states that he then informed Defendant Hahn "that Mr. Seitz was willing to speak to him" and that he has "no personal knowledge of the extent of communications between" them. Id. ¶¶ 10-11. In Reply, Defendant Hahn submitted a text message received from Mr. Otake in which Mr. Otake states that he "recall[s] that [Defendant Hahn] was interested in hiring [Mr. Seitz], and that [Mr. Otake] thought it was a good idea" and that Mr. Otake recalled that Defendant Hahn was "under the impression that [Mr. Seitz] would take [his] case." ECF No. 199-1 at 2. Mr. Otake also states in the text message that he "cannot remember specific conversations that [he] had with [Mr. Seitz] about it." Id.

## DISCUSSION

The determination of whether counsel should be disqualified is a discretionary matter. See Trust Corp. of Montana v. Piper Aircraft Corp., 701 F.

6

2d 85, 87 (9th Cir. 1983) ("An order disqualifying or refusing to disqualify counsel will not be disturbed if the record reveals any sound basis for the district court's action."). Motions to disqualify are subject to scrutiny by the Court because of the drastic nature of disqualification and the potential for abuse. See, e.g., Reading Int'l, Inc. v. Malulani Grp., Ltd., 814 F.3d 1046, 1053 (9th Cir. 2016) ("We are mindful of the drastic nature of disqualification."); In re Cty. of L.A., 223 F.3d 990, 995 (9th Cir. 2000) ("A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice."); Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir. 1985) ("Because of this potential for abuse, disqualification motions should be subject to particularly strict scrutiny." (internal quotation marks omitted)); Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 436 (1985) ("[W]e share the Court of Appeals' concern about tactical use of disqualification motions to harass opposing counsel." (internal quotation marks omitted)). "The party moving for disqualification must satisfy a high standard of proof by producing substantial evidence of facts justifying disqualification such that the asserted impropriety is clear." Agena v. Cleaver-Brooks, Inc., 428 F. Supp. 3d 267, 273 (D. Haw. 2019) (citation and internal quotation marks omitted). "As such, disqualification cannot be premised on general and conclusory allegations or concerns which are merely anticipatory and speculative." Id.

Here, the parties disagree whether the relationship between Mr. Seitz and Defendant Hahn is properly characterized as a former client conflict governed by HRPC 1.9 or a prospective client conflict pursuant to HRPC 1.18. In either case, the presence of a possible conflict pursuant to either rule warrants the Court's intervention.

As to former clients, HRPC Rule 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation, and confirms in writing." HRPC 1.9(a).

As to prospective clients, HRPC Rule 1.18 provides that "[e]ven when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client . . . shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter" unless certain exceptions apply. HRPC 1.18(a)-(d).

The Court will first consider the nature of the relationship between Mr. Seitz and Defendant Hahn and then apply the applicable standard for determining whether a conflict exists.

8

## I. The Relationship Between Mr. Seitz and Defendant Hahn

Before the Court considers any alleged violation of the HRPC, the Court must first determine the nature of the relationship between Mr. Seitz and Defendant Hahn. Specifically, the Court must determine whether Defendant Hahn was only a prospective client or whether an attorney-client relationship was formed.

The HRPC define a prospective client as "[a] person who discusses with a lawyer the possibility of forming client-lawyer relationship with respect to a matter." HRPC 1.18(a). Based on the undisputed facts discussed above, the Court finds that Defendant Hahn is owed duties under Rule 1.18 as a prospective client. Defendant Hahn had at least one discussion with Mr. Seitz about Mr. Seitz representing him in the criminal investigation, which created a reasonable expectation that Mr. Seitz was willing to discuss the possibility of forming a client-lawyer relationship with him. As noted in Comment 3 to Rule 1.18, the duty to prospective clients exists "regardless of how brief the initial conference may be." HRPC Rule 1.18 cmt. 3.

The next issue is whether Defendant Hahn remained only a prospective client or whether an attorney-client relationship was formed. The Court must consider the nature of interaction between the parties to determine whether an attorney-client relationship was established. See Stender v. Vincent,

9

992 P.2d 50, 58 (Haw. 2000) (finding that whether attorney-client relationship is present is a question of fact); see also Boskoff v. Yano, 57 F. Supp. 2d 994, 998 (D. Haw. 1998) (stating that "an attorney-client relationship is formed when an attorney renders advice directly to a client who has consulted him seeking legal counsel" (citing Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1505 (9th Cir. 1993)); McDevitt v. Guenther, 522 F. Supp. 2d 1272, 1280-81 (D. Haw. 2007) (holding that whether an attorney-client relationship exists is a question of fact based upon several factors.). "The court may look to the intent and conduct of the parties to determine whether the relationship was actually formed." Waggoner, 991 F.2d at 1505. The Court also considers whether the prospective client believed that an attorney-client relationship existed. See Boskoff, 57 F. Supp. 2d at 998 (citation omitted). However, that belief "must be objectively reasonable under the totality of the circumstances." Id. (citation omitted); see also Ragasa v. Cty. of Kauai, 2016 WL 11597768, at *5 (D. Haw. July 6, 2016) ("an attorney client-relationship can be created through the attorney's acts in the course of consultation and the client's reasonable belief, and not exclusively through the records associated with formalizing an attorney-client relationship").

Here, Defendant Hahn believed that an attorney-client relationship existed; yet, Mr. Seitz denies having an attorney-client relationship with Defendant Hahn. In his Reply, Defendant Hahn emphasizes that the evidence suggests that he

10

was in contact with Mr. Seitz <u>after</u> Mr. Seitz was retained by Plaintiffs in this action.  <u>See</u> ECF No. 196 at 5-7.  Specifically, in his Declaration Mr. Seitz states that was he retained by Plaintiffs "in mid-2016."  ECF No. 182-1 ¶ 2.  Based on the cell phone records provided by Defendant Hahn and the copy of the letter that he sent to Mr. Seitz, it appears that Defendant Hahn's contacts with Mr. Seitz took place in September and October 2016, which is after "mid-2016."  <u>See</u> ECF Nos. 196-3, 165-4.  Although the evidence suggests that Mr. Seitz spoke to Defendant Hahn after he was retained by Plaintiffs, the Court finds that the timing of Defendant Hahn's contact with Mr. Seitz is not critical for purposes of determining disqualification in this case.  Rather, the relevant inquiry is whether it was reasonable for Defendant Hahn to believe that he had formed an attorney-client relationship with Mr. Seitz.

It is undisputed that neither Mr. Otake nor Defendant Hahn provided any documents to Mr. Seitz related to the criminal investigation, that Defendant Hahn did not sign a written agreement with Mr. Seitz, that Defendant Hahn did not make payment arrangements with Mr. Seitz, and that Mr. Seitz did not appear on behalf of Defendant Hahn for any proceedings related to the criminal investigation.  Further, it is undisputed that Mr. Seitz did not perform any legal work for Defendant Hahn and did not provide any legal advice to Defendant Hahn related to the criminal investigation.  Based on the totality of the circumstances, the Court

finds that it was not objectively reasonable for Defendant Hahn to believe that an attorney-client relationship had been formed. It was not objectively reasonable to believe that an attorney-client had been formed considering no written agreement was signed, no payment arrangements were made, no appearances were made on Defendant Hahn's behalf, and no legal advice was provided. Considering all of the evidence regarding Defendant Hahn's dealings with Mr. Seitz, the Court concludes that Mr. Seitz and Defendant Hahn did not form an attorney-client relationship.

## II.  Whether Mr. Seitz Received Information That Could Be Significantly Harmful to Defendant Hahn

Having determined that Defendant Hahn is owed duties as a prospective client, the Court now considers whether Mr. Seitz is prohibited from representing Plaintiffs in this litigation. As an initial matter, there is no dispute that this litigation is substantially related to the criminal investigation and that Plaintiffs' interests in this litigation are adverse to Defendant Hahn. See HRPC 1.18(c). Because those conditions have been met, whether or not Mr. Seitz is prohibited from representing Plaintiffs comes down to whether he received information from Defendant Hahn that could be "significantly harmful" to Defendant Hahn. See id. Under Rule 1.18(c), a lawyer is prohibited from representing a client with interests adverse to those of a prospective client in a substantially related matter *if* the lawyer received from the prospective client

information that could be significantly harmful to the prospective client if used in the substantially related matter.  See id. 1.18(c), cmt. 5.

Rule 1.18 does not define "significantly harmful" and the Court is unaware of any Hawaii court decision that has addressed the issue.  However, other courts have considered the same "significantly harmful" language, which is based on the American Bar Association Model Rules of Professional Conduct, in deciding motions to disqualify counsel based on the duties owed to prospective clients.  See, e.g., Thompson v. Dueker, 346 S.W. 3d 390, 396 (Mo. Ct. App. 2011); O Builders & Assoc. Inc. v. Yuna Corp., 19 A.3d 966, 976 (N.J. 2011); In re Modanlo, 342 B.R. 230, 237 (D. Md. 2006).  These courts have held that "significantly harmful" means that disclosure of such information must be "prejudicial in fact to the former prospective client within the confines of the specific matter in which disqualification is sought, a determination that is exquisitely fact-sensitive and -specific."  O Builders & Assoc. Inc., 19 A.3d at 976.  Defendant Hahn, as the party moving for disqualification, has the burden to show that such "significantly harmful" information was disclosed to Mr. Seitz.  See Agena, 428 F. Supp. 3d at 273; see also Thompson, 346 S.W. 3d at 396 ("application of the new Rule 1.18 will necessarily require at least some disclosure, either by the objecting prospective client or by the lawyer, of the scope of information discussed") (citing Charles W. Wolfram, Ethics 2000 and Conflicts of

13

Interest: The More Things Change . . . , 70 Tenn. L. Rev. 27, 60 (2002)).

As detailed above, Mr. Seitz states that "Mr. Hahn provided no information about the [criminal] matter or his potential involvement," and that Mr. Otake similarly "did not provide any information to [Mr. Seitz] about the investigation involving Mr. Hahn, provided no details or information about Mr. Hahn himself, and did not share with me the contents of any documents or materials regarding Mr. Hahn." ECF No. 182-1 ¶ 8, 11.  Defendant Hahn states in his Declaration that he "disclosed numerous details of information from the criminal case," that he disclosed "a half hour of confidential information to Mr. Seitz," and that Mr. Otake "disclosed more information about my criminal case to Mr. Seitz." ECF No. 165-3 ¶¶ 4, 9, 11.

The Court finds that Defendant Hahn's vague assertion that he disclosed "numerous details of information from the criminal case" and "confidential information" to Mr. Seitz insufficient to establish that Mr. Seitz received information that could be prejudicial to Defendant Hahn in this litigation. See ECF No. 165-3 ¶¶ 4, 9.  As noted above, the case law makes clear that "disqualification cannot be premised on general and conclusory allegations or concerns which are merely anticipatory and speculative." Agena v. Cleaver-Brooks, Inc., 428 F. Supp. 3d 267, 273 (D. Haw. 2019) (citation and internal quotation marks omitted).  Defendant Hahn not shown that Mr. Seitz received

information during their prospective client relationship that could be "significantly harmful" to Defendant Hahn in this litigation. Accordingly, Mr. Seitz is not prohibited from representing Plaintiffs in this litigation under Rule 1.18.

CONCLUSION

Defendant Derek Hahn's Motion to Disqualify Plaintiffs' Counsel and Defendant City and County of Honolulu's Joinder thereto are DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, JULY 13, 2021.



Wes Reber Porter
United States Magistrate Judge

**PUANA, ET AL. vs. KEALOHA, ET AL ; CIVIL NO. 16-00659 LEK-WRP; ORDER DENYING DEFENDANT DEREK HAHN'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AND THE JOINDER THERETO**