UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| GERARD K. PUANA, RICKY L. HARTSELL, AS TRUSTEE OF THE FLORENCE M. PUANA TRUST;<br><br>        Plaintiffs,<br><br>    vs.<br><br>KATHERINE P. KEALOHA, LOUIS M. KEALOHA, MINH-HUNG NGUYEN, MINH-HUNG "BOBBY" NGUYEN; DANIEL SELLERS, NIALL SILVA, WALTER CALISTRO, DRU AKAGI,  JOHN AND/OR JANE DOES 1-50, DEREK WAYNE HAHN,<br><br>        Defendants. | CIV. NO. 16-00659 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART
THE MOTIONS TO DISMISS**

        Before the Court are: (1) Defendant Derek Hahn's

("Hahn") Motion to Dismiss ("Hahn Motion"), filed on August 16,

2021; (2) Defendant City and County of Honolulu's ("the City")

Motion to Dismiss Second Amended Complaint (ECF 207) ("City

Motion"), filed on August 24, 2021; and (3) Defendant Minh-Hing

"Bobby" Nguyen's ("Nguyen") Motion to Dismiss Second Amended

Complaint [Doc. 207] ("Nguyen Motion"), filed on September 23,

2021 (collectively "the Motions").  [Dkt. nos. 211, 216, 236.]

Plaintiffs Gerard K. Puana ("Puana") and Ricky L. Hartsell as

Trustee of the Florence M. Puana Trust (collectively

"Plaintiffs") filed their memoranda in opposition to the City

Motion and the Hahn Motion on September 24, 2021 and their
memorandum in opposition to the Nguyen Motion on October 29,
2021.  [Dkt. nos. 238,[1] 241, 263.]  Hahn and the City filed their
respective replies on October 1, 2021 and October 8, 2021.
[Dkt. nos. 251, 256.]  Nguyen did not file a reply.  The Hahn
Motion and the City Motion came on for hearing on October 15,
2021.  See Minutes, filed 10/15/21 (dkt. no. 260).  The Court
found the Nguyen Motion suitable for disposition without a
hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice
for the United States District Court for the District of Hawaii
("Local Rules").  See Entering Order, filed 11/9/21 (dkt.
no. 264).  The Motions are hereby granted in part and denied in
part for the reasons set forth below.

## BACKGROUND

According to Plaintiffs, around January 2007,
Katherine Kealoha ("Katherine"), a Deputy Prosecuting Attorney
for the City at the time, approached Puana with an investment
opportunity.  [Second Amended Complaint for Damages ("Second
Amended Complaint"), filed 8/1/21 (dkt. no. 207), at ¶ 19.]
Puana is Katherine's uncle.  Between February 2007 and October

---

[1] Plaintiffs' memorandum in opposition to the City Motion
includes a Cross-Motion for Partial Summary Judgment.  This
Court has informed the parties that the motion for summary
judgment will be addressed separately from the instant Motions.
See Minute Order, filed 10/5/21 (dkt. no. 255).

2008, Puana invested with Katherine.  In December 2007, Puana asked Katherine if his investments could be used as a down payment to purchase a condominium ("the Greenwood Condo"), but she told him the amount invested was not sufficient for a down payment.  In January 2009, Katherine asked Puana to talk to Florence Puana ("Florence"), Puana's mother and Katherine's paternal grandmother, about seeking a reverse mortgage on Florence's house to fund the Greenwood Condo purchase and allow Katherine and her husband Louis Kealoha ("Louis" and collectively "the Kealohas"), who served as the Chief of Police for the Honolulu Police Department ("HPD") at the time, to consolidate their personal bills and refinance a property.  In the same month, Katherine obtained power of attorney from Florence and became the Trustee of the Gerard K. Puana Revocable Trust ("the Puana Trust"), in which she allegedly prepared and executed a fraudulent trust document.  The document effectuating the Puana Trust was notarized by a person named Allison Lee-Wong.  Plaintiffs allege Katherine used the name Allison Lee-Wong as an alter ego to facilitate fraudulent activities. Plaintiffs allege Puana never signed the Puana Trust document, and it contained a list of assets that have never belonged to Puana.  [Id. at ¶¶ 19-31.]

        In October 2009, the reverse mortgage was recorded and the funds, approximately $513,474, were deposited into an

account controlled by Katherine.  [Id. at ¶ 32.]  In the same month, the Greenwood Condo deed, in Katherine's name, was recorded.  Katherine did not pay off the reverse mortgage as she promised, and Florence lost her house as a result.  Plaintiffs allege the Kealohas spent the funds from the reverse mortgage on their lavish and extravagant lifestyle.  [Id. at ¶¶ 32, 34-35.]

In 2011, Puana became suspicious of Katherine and asked her multiple times to return to him the money he invested, and she refused.  Subsequently, the Kealohas began a campaign to falsely implicate Puana in criminal activity.  The campaign included Louis directing HPD Criminal Intelligence Unit ("CIU") officers to surveil Puana twenty-four hours a day.  On June 27, 2011, Puana was arrested for unauthorized entry into a dwelling ("UED") after stepping inside his neighbor's house during an argument over a parking spot.  Plaintiffs allege that, once Puana was arrested, Katherine unlawfully entered his residence with Nguyen and Defendant Daniel Sellers ("Sellers"), who were CIU officers.  Katherine seized $15,000 in cash and other items. On June 30, 2011, Puana was charged with UED in a case prosecuted by the office where Katherine was then employed as a Senior Deputy Prosecuting Attorney.  Puana was incarcerated for seventy-two days.  During that time, Katherine told family members his arrest was drug related and they should not post

bail or assist him because she was handling the situation.  [Id. at ¶¶ 48-56.]

Puana pleaded no contest to the UED charge, and he received a deferred acceptance of his plea.  [Id. at ¶ 64.] Around November 2013, Katherine directed personnel at the prosecutor's office to oppose Puana's motion to dismiss his deferred acceptance of no contest plea and to argue the court should convert the deferred acceptance of no contest into a felony conviction.  [Id. at ¶ 67.]

In March 2013, Plaintiffs sued Katherine in state court for fraud and breach of fiduciary duty, amongst other claims relating to the 2009 reverse mortgage.  Katherine filed a counterclaim against Florence and Puana.  Plaintiffs allege Katherine lied and committed perjury throughout that case.  On February 12, 2015, the jury returned a verdict in favor of Katherine and awarded her $658,787 in damages on her counterclaim.  [Id. at ¶¶ 69-78.]

In June 2013, the Kealohas continued their campaign to discredit Puana by staging the theft of their personal mailbox to frame Puana.  [Id. at ¶ 85.]  Plaintiffs allege Katherine, Louis, Nguyen, Sellers, and Hahn (who was also an HPD officer) made false statements, fabricated evidence, and falsified reports to implicate Puana in the theft of the mailbox. Specifically, Plaintiffs allege: Nguyen and Louis falsely

identified Puana as the person who stole the mailbox; Katherine reported to the police that she could identify Puana from surveillance video as the person stealing the mailbox; and Puana was followed and investigated by police officers, including Nguyen, Sellers, Hanh, Defendant Walter Calistro ("Calistro"), Defendant Drew Akagi ("Akagi"), and Defendant Niall Silva ("Silva").  Puana was arrested and charged for destroying a letter box or mail and indicted by a federal grand jury.  [Id. at ¶¶ 87–96.]  Plaintiffs allege that, on December 4, 2014, Louis testified at Puana's federal criminal trial, and he knowingly and deliberately testified falsely and revealed prejudicial information before the jury, which caused a mistrial.  On December 15, 2014, the federal charge against Gerard Puana was dismissed with prejudice.  [Id. at ¶¶ 99–100.]

Plaintiffs allege that, in 2015 and 2016, the Honolulu Police Commission ("Police Commission") refused to open its own investigation into Louis's conduct related to the December 2014 mistrial.  On December 19, 2016, Louis received a target letter from the United States Attorney's Office informing him that he was the target of a federal grand jury corruption investigation. He was subsequently placed on paid leave.  [Id. at ¶¶ 104-06.] Louis received a $250,000 severance and allowed to resign in "good standing."  [Id. at ¶¶ 107, 110.]

Plaintiffs also allege that, in 2014 and 2015, the City and County of Honolulu Ethics Commission's ("Ethics Commission") Executive Director Charles Totto ("Totto") had seventeen separate investigations open regarding Louis and Katherine's misuse of City resources, conflicts of interest, and abuse of their positions. [Id. at ¶¶ 114-117.] Plaintiffs allege the Ethics Commission, Prosecuting Attorney Keith Kaneshiro ("Kaneshiro"), and others frustrated the investigations, which ultimately led to Totto's removal from investigating Louis and Katherine. See id. at ¶¶ 118-23.

Plaintiffs further allege that, in 2016, Kaneshiro made public statements in support of Katherine, criticized the federal grand jury investigation into the crimes she was ultimately convicted of, and expressed his belief in Katherine's innocence. [Id. at ¶ 136.]

On December 16, 2016, Silva pled guilty to a felony. He was originally charged with conspiring to obstruct justice for his false statements, false testimony, and false reports regarding the handling of the surveillance video which purportedly showed Puana stealing the Kealohas' mailbox. As charged in the felony, Silva conspired with Katherine, Nguyen, Sellers, and Louis. [Id. at ¶¶ 137-38.]

On October 19, 2017, Katherine, Louis, Hahn, and Nguyen were indicted by a federal grand jury and charged with

7

conspiring to violate Plaintiffs' constitutional rights under color of law, conspiring to alter, destroy, or conceal evidence, conspiring to make false statements, conspiring to obstruct justice, bank fraud, and identity theft.  [Id. at ¶ 139.]  In March 2018, Katherine, Louis, Hahn, and Nguyen were charged in a First Superseding Indictment.  On June 27, 2019, a jury found Katherine, Louis, Hahn, and Nguyen guilty of: conspiring to obstruct justice regarding the investigation and prosecution of Puana for the purported stolen mailbox; obstructing and impeding Puana's criminal trial; and obstructing and impeding the investigation which resulted in the charges brought against them.  [Id. at ¶¶ 141–42.]  As part of their plea agreements in their bank fraud and identity theft case, the Kealohas allegedly admitted to stealing the proceeds from the reverse mortgage on Florence's house and spending it to support their lavish and extravagant lifestyle.  [Id. at ¶¶ 143–45.]

On August 23, 2019, Plaintiffs filed their motion for new trial in the state civil case regarding the 2009 reverse mortgage, based on the newly discovered evidence produced at trial in the criminal case against Katherine.  The motion for new trial was granted on September 13, 2019.  [Id. at ¶¶ 79–80.]

Relevant to the instant Motions, Plaintiffs' Second Amended Complaint alleges: (1) the City violated Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments of the

8

United States Constitution and the corresponding rights guaranteed by the State of Hawai`i Constitution ("Count I"); (2) Nguyen and Hahn violated 18 U.S.C. § 1962(c) by engaging in a pattern of racketeering activity ("civil RICO claims" and "Count II"); (3) Nguyen and Hahn intentionally inflicted emotional distress ("IIED") on Plaintiffs ("Count III"); and (4) Nguyen and Hahn defamed Plaintiffs ("Count IV").[2]  [Id. at pgs. 38-41.]

## DISCUSSION

### I.   Hahn Motion

Hahn argues the civil RICO, IIED, and defamation claims alleged against him should be dismissed because the statute of limitations has expired, and the claims against him in the Second Amended Complaint do not relate back to the First Amended Complaint.  See Mem. in Supp. of Hahn Motion at 3-5.

Plaintiffs' defamation and IIED claims against Hahn have a two-year statute of limitations.  See Haw. Rev. Stat.

---

[2] Although Plaintiffs, in the Second Amended Complaint, allege generally that all the defendants are liable in their official capacities for Count I, the parties stipulated that only the City is the proper defendant for Count I, which appears to be brought pursuant to 42 U.S.C. § 1983.  See Stipulation to Substitute City and County of Honolulu as Defendant for Official Capacity Claims and Dismiss Official Capacity Claims Against Individual Defendants with Prejudice and Order, filed 2/17/21 (dkt. no. 118).  As such, to the extent that the Second Amended Complaint alleges Count I against defendants other than the City, the Court disregards such allegations.

§§ 657-4, 657-7; see also Hale v. Haw. Publ'ns, Inc., 468 F.
Supp. 2d 1210, 1232 (D. Hawai`i 2006) (stating that Haw. Rev.
Stat. § 657-7 applies to IIED claims).  "The statute of
limitations for a civil RICO claim is four years." Moran v.
Bromma, 675 F. App'x 641, 644 (9th Cir. 2017) (citing Agency
Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156,
107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987)).  The three claims are
governed by the "discovery rule," i.e., a claim accrues when the
plaintiff knows or has reason to know of the injury.  See
Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 90, 648 P.2d 689,
693-94 (1982) (citation omitted) (stating that the discovery
rule determines when Hawai`i tort claims begin to accrue);
Tanaka v. First Hawaiian Bank, 104 F. Supp. 2d 1243, 1246 (D.
Hawai`i 2000) (stating "'a civil RICO cause of action arises
when the plaintiff knows or should know that [he] has been
injured'" (alteration in Tanaka) (quoting Grimmett v. Brown, 75
F.3d 506, 512 (9th Cir. 1996))).

     Plaintiffs do not allege precisely when they became
aware of their injuries.  Assuming Plaintiffs became aware of
their injuries when the federal theft charge against Puana was
dismissed on December 16, 2014, the statute of limitations
expired on December 16, 2016 for the IIED and defamation claims,
while the civil RICO claim's statute of limitations expired on

December 16, 2018.[3]   Plaintiffs filed their original complaint on December 14, 2016, and Hahn was not named as a defendant at that time.   <u>See</u> Complaint for Damages, filed 12/14/16 (dkt. no. 1). Plaintiffs filed their First Amended Complaint, which added Hahn as a defendant to the action, on September 3, 2020.   <u>See</u> First Amended Complaint for Damages, filed 9/3/20 (dkt. no. 80). Plaintiffs filed the Second Amended Complaint on August 1, 2021. [Dkt. no. 207.]   The statute of limitations for Plaintiffs' claims against Hahn expired by the time they filed the First Amended Complaint.   Thus, Plaintiffs' claims against Hahn are time-barred, unless they relate back to the original complaint.

Federal Rule of Civil Procedure 15(c)(1) governs when "[a]n amendment to a pleading relates back to the date of the original pleading."   It "incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient."   <u>Butler v. Nat'l Cmty. Renaissance of Cal.</u>, 766 F.3d 1191, 1200 (9th Cir. 2014). Federal Rule of Civil Procedure 15(c), however, is more lenient than Hawaii's relation back rule.   <u>See</u> <u>Fatai v. City & Cnty. of Honolulu</u>, Case No. 19-cv-00603-DKW-WRP, 2021 WL 1063790, at *6

---

[3] Hahn states December 16, 2016 is the very latest the statute of limitations could have expired for Plaintiffs' claims, which is two years after the federal charges against Gerard Puana were dismissed.   <u>See</u> Mem. in Supp. of Hahn Motion at 4.   Plaintiffs do not appear to contest this.

n.14 (D. Hawai`i Mar. 18, 2021); see also Haw. R. Civ. P. 15(c).

The Court therefore analyzes the relation-back issue under

Federal Rule of Civil Procedure 15(c).

This district court has stated:

> With regard to adding defendants to an
> amended filing, a plaintiff must meet a three-
> part test. A plaintiff must necessarily show:
> (1) that the amendment arose out of the same
> conduct, transaction, or occurrence set forth in
> the original complaint; (2) that within 90 days
> of the original complaint being filed, the newly
> added defendants had notice of it; and (3) the
> newly added defendants knew or should have known
> that the action would have been brought against
> them but for a mistake concerning the proper
> party's identity. Fed. R. Civ. P. 15(c); see
> also Krupski v. Costa Crociere S.P.A., 560 U.S.
> 538, 545 (2010). The plaintiff has "the burden
> of proving that the proposed defendant had actual
> or constructive notice of a lawsuit." Harlow v.
> Chaffey Comm. Coll. Dist., 2019 WL 6520038, at *2
> (C.D. Cal. June 28, 2019) (citation omitted).

Fatai, 2021 WL 1063790, at *6.

The parties do not dispute that the amendment arose

out the same conduct set forth in the original complaint.

Instead, the parties dispute whether (1) Hahn had notice of the

suit within 90 days after the suit was filed and (2) Hahn knew

or should have known that the action would have been brought

against him but for a mistake concerning the proper party's

identity. Plaintiffs fail to establish that Hahn had notice of

the suit.

Plaintiffs rely on <u>Korn v. Royal Caribbean Cruise Line, Inc.</u>, 724 F.2d 1397 (9th Cir. 1984), and its progeny to argue Hahn had notice of the suit because Hahn had "a sufficient identity or community of interest" with Louis, Nguyen, and Silva.  [Mem. in Opp. to Hahn Motion at 6.]  Plaintiffs allege Hahn received constructive notice because, although Hahn was not served with the original compliant, Louis, Nguyen, and Silva - members of the same CIU as Hahn - were served with the original complaint.  <u>See id.</u> at 7–8.  In <u>Korn</u>, the Ninth Circuit reversed the denial of the plaintiff's attempt to amend his original complaint to name the proper defendant.  <u>See Korn</u>, 724 F.2d at 1401.  There, the plaintiff initially named as the defendant Royal Caribbean Line, Inc, which was the marketing and sales agent for the proper defendant, Royal Caribbean Cruise Line A/S.  <u>See id.</u> at 1398.  The Ninth Circuit held that there was "sufficient community of interest" between the two entities to impute knowledge of the suit from the original defendant to the proper defendant because a third entity, which served as the operating agent for the first two entities, had knowledge of the suit.  <u>See id.</u> at 1401.  Specifically, correspondence addressed to Royal Caribbean Line, Inc. was sent to a claims clerk for the operating agent and the operating agent requested additional information, including medical bills.  The operating agent also reiterated to the plaintiff's attorney that Royal Caribbean

13

Line, Inc. was the proper party to name as a defendant although it was not.  Id.

Korn is inapposite here because the facts in the instant case are not analogous.  Other than pointing to Hahn's work connections with Louis, Nguyen, and Silva, Plaintiffs do not allege facts to impute knowledge of the suit onto Hahn. Without more, Plaintiffs fail to sufficiently allege Hahn had notice of the suit.  The claims against Hahn were not timely filed and, therefore, are dismissed.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))).  However, the dismissal is without prejudice because it may be possible for Plaintiffs to cure the defects by amendment.  See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (citation and quotation marks omitted)).

II.  **Nguyen Motion[4]**

Nguyen argues the civil RICO, IIED, and defamation claims alleged against him should be dismissed.  The Court addresses each claim in turn.

A.  **Civil RICO Claim**

Nguyen argues Plaintiffs fail to allege both the existence of an enterprise and Nguyen's participation in a pattern of racketeering activity.  [Mem. in Supp. of Nguyen Motion at 4-5.]  Under 18 U.S.C. § 1962(c),

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The Ninth Circuit has stated:

> "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001); see also Rae v. Union Bank, 725 F.2d 478, 481 (9th

---

[4] Nguyen refers to his Motion as a motion to dismiss but cites to Fed. R. Civ. P. 12(c).  See, e.g., Nguyen Motion at 2.  Fed. R. Civ. P 12(c) governs a motion for judgment on the pleadings.  However, the standards for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) are functionally identical.  See Cafasso v. Gen. Dynamics C4 Sys. Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Thus, the Court applies the Iqbal standard in analyzing the Nguyen Motion.

> Cir.1984).  The term "enterprise" is defined in
> 18 U.S.C. § 1961(4) as "any individual,
> partnership, corporation, association, or other
> legal entity, and any union or group of
> individuals associated in fact although not a
> legal entity."

Living Designs, Inc. v. E.I. Dupont de Numours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (alteration in Living Designs).  The "expansive definition" of "enterprise" "is 'not very demanding.'"  United States v. Christensen, 828 F.3d 763, 780 (9th Cir. 2015) (quoting Odom v. Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007) (en banc)).  "An associated-in-fact enterprise . . . . has three elements: (1) a common purpose, (2) an ongoing organization, and (3) a continuing unit."  Id. (citing Odom, 486 F.3d at 552).  Additionally, "liability depends on showing that the defendants conducted or participated in the conduct of the '**enterprise's** affairs,' not just their **own** affairs."  Cedric Kushner Promotions, 533 U.S. at 163 (emphases in Cedric Kushner Promotions) (citation and some internal quotation marks omitted).

Plaintiffs argue the enterprise in question is the CIU.  See Mem. in Supp. of Nguyen Motion at 10.  Plaintiffs allege members of the CIU began surveilling Puana in 2011. [Second Amended Complaint at ¶ 50.]  Louis allegedly ordered CIU officers to implicate Puana in the 2013 mailbox theft.  [Id. at ¶ 88.]  Members of the CIU allegedly falsified and fabricated

16

evidence, which included Nguyen falsely identifying Puana as the person who stole the Kealoha's mailbox.  See id. at ¶¶ 88-89, 95.  In light of these alleged facts, Plaintiffs have sufficiently alleged an enterprise because: (1) the CIU officers identified in the Second Amended Complaint had a common purpose of implicating Puana in the mailbox theft or otherwise discrediting him; (2) the CIU was an ongoing organization in that it was "a vehicle for the commission" of the alleged conduct, see Odom, 486 F.3d at 552 (quotation marks and citation omitted); and (3) the relevant CIU officers constituted a continuing unit such that it existed long enough, and not in an isolated manner, to engage in behavior consistent with its purpose, see id. at 553.

Nguyen next argues Plaintiffs did not adequately allege a pattern of racketeering activity.  "'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code . . . ."  Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004) (some citations omitted) (citing 18 U.S.C. § 1961(1)).  A "'pattern of racketeering activity' requires at least two acts of racketeering activity . . . ."  18 U.S.C. § 1961(5).  A "pattern" also "requires that the predicate criminal acts be 'related' and 'continuous.'"  Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir. 1995) (quoting H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239, 109 S. Ct.

2893, 2900–01, 106 L. Ed. 2d 195 (1989)).  "The element of relatedness is the easier to define . . . ."  H.J. Inc., 492 U.S. at 239.  Predicate criminal acts may be related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240 (quotation marks and citation omitted).  The element of continuity, however, is more challenging to define.

> In H.J. Inc., the Supreme Court observed that the term "continuity" escapes strict definition: "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition."  [492 U.S.] at 241, 109 S. Ct. at 2902.  "Closed-ended" continuity is established by showing that related predicate acts occurred over a "substantial period of time."  Id. at 242, 109 S. Ct. at 2902.  The Court thus noted that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement," and concluded that "Congress was concerned in RICO with long-term criminal conduct."  Id.

> Where long-term criminal conduct cannot be established, "open-ended" continuity may be proved.  Id.  Open-ended continuity is the threat that criminal conduct will continue into the future.  It is established by showing either that the predicate acts "include a specific threat of repetition extending indefinitely into the future" or that the predicate acts were "part of an ongoing entity's regular way of doing business."  Id.

> The Court warned that "the precise methods by which relatedness and continuity or its threat

> may be proved, cannot be fixed in advance with
> such clarity that it will always be apparent
> whether in a particular case a 'pattern of
> racketeering activity' exists."  Id. at 243, 109
> S. Ct. at 2903.

Allwaste, 65 F.3d at 1527 (some alterations in Allwaste).

Plaintiffs allege the racketeering activity here
"consists of the acts of obstruction under 18 U.S.C. § 1512(c)."
[Mem. in Opp. to Nguyen Motion. at 10.]  They further argue
those acts commenced in 2011 when Louis "assigned CIU officers
to follow and surveil Gerard Puana and continued into 2014 when
[Louis] committed perjury and caused a mistrial in [the federal
mailbox theft case against Puana]."  [Id.]  As to Nguyen,
Plaintiffs allege that, in 2011, Nguyen assisted Katherine in
unlawfully entering Puana's residence after Puana was arrested
for the UED charge.  [Second Amended Complaint at ¶ 53.]  Nguyen
then allegedly joined the CIU in 2012.  [Id. at ¶ 45.]  As a
member of the CIU, Nguyen falsely identified Puana as the person
who stole the mailbox.  [Id. at ¶ 89.]  In October 2017, Nguyen
was indicted by a federal grand jury for conspiring with
Katherine, Louis, and Hahn to, among other things, alter,
destroy, or conceal evidence related to the 2013 mailbox theft.
[Id. at ¶ 139.]

Although Plaintiffs argue the racketeering activity
concerns obstruction in the 2013 mailbox theft case, they also
allege obstruction as to the 2011 UED case where Nguyen assisted

Katherine with entering Puana's residence.  Plaintiffs provide scant facts on how assisting Katherine with entering Puana's residence violates 18 U.S.C. § 1512(c).  Section 1512(c) provides that:

> (c)  Whoever corruptly--
>
> (1)  alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2)  otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

Plaintiffs sufficiently allege that members of the CIU, including Nguyen, violated § 1512(c) in the 2013 mailbox theft case against Puana.  But, they do not allege how the conduct stemming from the 2011 UED case violates § 1512(c).  Additionally, Plaintiffs allege Nguyen joined the CIU in 2012, yet he assisted Katherine in 2011.  Thus, it is unclear under Plaintiffs' theory how Nguyen's conduct can be attributable to the enterprise if he was not a member of the CIU at that time.  If Nguyen's conduct is not attributable to the enterprise, then his conduct cannot serve as a predicate act of the enterprise.  See Cedric Kushner Promotions, 533 U.S. at 163.  As such,

Plaintiffs' civil RICO claim fails because they have not alleged at least two predicate acts.

Even if Plaintiffs plausibly allege two predicate acts, their civil RICO claim still fails because the allegations concerning the element of continuity are insufficient. Plaintiffs essentially allege a single scheme with a single victim - *i.e.*, to discredit Puana or implicate him in criminal activity. "[W]hen a plaintiff alleges only a single scheme with a single victim it cuts against a finding of both closed-ended as well as open-ended continuity." Metaxas v. Lee, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020) (citing Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 365-67 (9th Cir. 1992)). This is particularly true "in the context of open-ended continuity," because "a criminal scheme with a singular goal poses no threat of continuing criminal activity once that goal is achieved." Id. (citation omitted).

> In general, it is difficult to discern a "pattern" of criminal activity where the alleged conduct derives from a single wrong directed at a single victim. The case at bar contrasts with paradigmatic RICO cases involving multiple acts against multiple victims. See, e.g., H.J. Inc., 492 U.S. at 249-50, 109 S. Ct. 2893 (holding that various plaintiff-victims alleged a pattern of racketeering activity against defendants who paid and received "numerous bribes, in several different forms," "over at least a 6-year period"); Allwaste, 65 F.3d at 1529 (ruling that pattern requirement was satisfied where defendants demanded kickbacks from four victims and where "there [was] nothing to suggest that

21

> they would have ceased" because the scheme was
> "not connected to the consummation of any
> particular transaction").

Id. at 944 (alteration in Metaxas).

Here, open-ended continuity is not plausibly alleged because the CIU's single scheme against Puana does not indicate a threat of continuing criminal activity once it achieved its goal of implicating Puana in the mailbox theft. Closed-ended continuity is also not plausibly alleged because the CIU officers' acts of fabricating evidence and falsely identifying Puana as the mailbox thief "were a part of, and dependent upon, the core act of" implicating Puana in the mailbox theft – suggesting "a single wrong directed at a single victim." See id.

Although close-ended continuity may be found when "a series of related predicates extend[] over a substantial period of time," see H.J. Inc., 492 U.S. at 242, Plaintiffs do not plausibly allege that the scheme to implicate Puana in the mailbox theft extended over a substantial period. The Kealohas staged the mailbox theft on June 21, 2013 and Nguyen falsely identified Puana the next day. See Second Amended Complaint at ¶¶ 85, 89. Puana was indicted on July 1, 2013. [Id. at ¶ 96.] Such a short amount of time forecloses a finding of close-ended continuity. See H.J. Inc., 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future

22

criminal conduct do not satisfy this requirement[.]"). Plaintiffs argue the related acts extended to December 4, 2014 when Louis testified at Puana's federal criminal trial. <u>See</u> Mem. in Opp. to Nguyen Motion at 10. Plaintiffs' argument is not convincing because they fail to articulate how Louis's conduct is attributable to Nguyen. Accordingly, Plaintiffs fail to state a plausible civil RICO claim against Nguyen, and the claim must be dismissed. But, because amendment may cure the claim's defects, the dismissal is without prejudice.

**B.   IIED Claim**

"[T]he tort of IIED consists of four elements: 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." <u>Young v. Allstate Ins. Co.</u>, 119 Hawai`i 403, 429, 198 P.3d 666, 692 (2008) (internal quotation marks and citation omitted). "An IIED claim 'requires conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind.'" <u>You v. Longs Drugs Stores Cal., LLC</u>, 937 F. Supp. 2d 1237, 1259 (D. Hawai`i 2013) (quoting <u>Hac v. Univ. of Haw.</u>, 102 Hawai`i 92, 106, 73 P.3d 46, 60 (2003)).

Plaintiffs point to two acts for their IIED claim against Nguyen: (1) Nguyen assisting Katherine with entering

23

Puana's residence in 2011, which resulted in Katherine allegedly stealing $15,000; and (2) Nguyen falsely identifying Puana as the person who stole the Kealoha's mailbox.  [Mem. in Opp. to Nguyen Motion at 12.]  Plaintiffs' allegations concerning Nguyen assisting Katherine with entering Puana's residence are insufficient for a plausible IIED claim.  Plaintiffs do not allege that Nguyen knew Katherine was going to seize the money or intended to assist her for the purpose of seizing the money. Moreover, Plaintiffs do not allege Nguyen entered Puana's residence.  In fact, the Second Amended Complaint does not provide **how** Nguyen assisted Katherine with entering the premises.  Without such factual allegations, Plaintiffs fail to allege a plausible IIED claim against Nguyen related to his conduct in 2011.  Thus, that claim is dismissed but, because amendment may cure the claim's defects, the dismissal is without prejudice.

However, Plaintiffs plausibly allege an IIED claim related to Nguyen falsely identifying Puana as the mailbox thief.  First, Plaintiffs allege Nguyen intentionally made the false identification to implicate Puana in the mailbox theft. See Second Amended Complaint at ¶¶ 88–89, 95.  Second, Nguyen falsely identifying Puana as the mailbox thief is sufficiently outrageous because Nguyen, a police officer entrusted with considerable authority, abused his power to frame Puana in a

24

crime he did not commit.  See Young, 119 Hawai`i at 425, 198

P.3d at 688 ("The extreme and outrageous character of the

conduct may arise from an abuse by the actor of a position, or a

relation with the other, which gives him actual or apparent

authority over the other, or power to affect his interests."

(quotation marks and citation omitted)).  Third, Plaintiffs

allege Nguyen's conduct caused Puana to suffer from "enormous

emotional distress, worry, and anxiety."  [Second Amended

Complaint at ¶ 151.]  The Nguyen Motion is therefore denied as

to this claim.

   **C.** **Defamation Claim**

    To plead a defamation claim under Hawai`i law, a

plaintiff must allege:

> (a)  a false and defamatory statement concerning
> another;
>
> (b)  an unprivileged publication to a third
> party;
>
> (c)  fault amounting at least to negligence on
> the part of the publisher [actual malice where
> the plaintiff is a public figure]; and
>
> (d)  either actionability of the statement
> irrespective of special harm or the existence of
> special harm caused by the publication.

Nakamoto v. Kawauchi, 142 Hawai`i 259, 270, 418 P.3d 600, 611

(2018) (alteration in Nakamoto) (citation omitted).  Plaintiffs

allege a plausible defamation claim.

"[U]nder Hawaii law, statements that 'impute to a person the commission of a crime' are defamatory per se." Tuomela v. Waldorf-Astoria Grand Wailea Hotel, Civ. No. 20-00117 JMS-RT, 2021 WL 233695, at *4 (D. Hawaiʻi Jan. 22, 2021) (quoting Isaac v. Daniels, 2018 WL 1903606, at *6 (D. Haw. Mar. 20, 2018)).  Plaintiffs allege such a statement because they allege Nguyen falsely identified Puana as the mailbox thief.[5]  Plaintiffs argue the statement was published because it was made "to others which resulted in Gerard Puana's arrest and an indictment being secured against him."  [Mem. in Opp. to Nguyen Motion at 13.]  Although Plaintiffs do not precisely allege the "others" to whom Nguyen made the identification, they allege the statement was used as evidence to implicate Puana, including in reports.  See Second Amended Complaint at ¶¶ 88–89. Statements made to police officers or contained in police reports can constitute as publication for purposes of a defamation claim.  Cf. Tuomela, 2021 WL 233695, at *5 (denying the motion for judgment on the pleadings as to a defamation

---

[5] It is unclear whether Nguyen made the identification orally or in writing.  It is irrelevant for this discussion, however, because "Hawaii views claims for slander and libel under the defamation rubric."  See McNally v. Univ. of Haw., 780 F. Supp. 2d 1037, 1058 (D. Hawaiʻi 2011) (citing Bauernfiend v. AOAO Kihei Beach Condominiums, 99 Hawaiʻi 281, 282 n.2, 54 P.3d 452 n.2, 453 (Haw. 2002)) (some citations omitted).

claims based on statements, but noting the plaintiff would have the burden of proving the qualified privilege was abused).[6]

Finally, because Plaintiffs plausibly allege defamation per se, they do not need to allege special damages. See Isaac v. Daniels, CIVIL NO. 16-00507 DKW-RLP, 2018 WL 1903606, at *6 (D. Hawai`i Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 1902543 (Apr. 20, 2018).  Thus, Plaintiffs plausibly allege a defamation claim and, therefore, the Nguyen Motion is denied as to this claim.

D.    **Summary**

Because Plaintiffs sufficiently allege (1) an IIED claim against Nguyen relating to his false identification of Puana and (2) a defamation claim against Nguyen relating to his false identification of Puana, the Nguyen Motion is denied as to those claims.  However, the Nguyen Motion is granted, insofar as Plaintiffs' civil RICO and IIED claims against Nguyen relating to his 2011 conduct in assisting Katherine with entering Puana's residence are dismissed.  The dismissals of those claims are without prejudice because it is arguably possible to cure the defects in those claims by amendment.

---

[6] Nguyen does not raise the issue of whether Nguyen's statements implicating Puana were privileged.  Thus, the Court does not address whether a qualified privilege applies here.

III. **The City Motion**

        Plaintiffs allege § 1983 claims against the City stemming from three events: (1) the 2009 incident where the Kealohas stole the proceeds from a reverse mortgage belonging to Florence; (2) the 2011 incident where Puana was arrested, charged, and pled no contest to UED; and (3) the 2013 incident where Puana was charged with mailbox theft.  The City argues the § 1983 claims regarding the 2009 and 2011 incidents should be dismissed with prejudice because they are barred by the statute of limitations.  The City further argues the § 1983 claim concerning the 2013 mailbox theft charge should be dismissed with prejudice because Plaintiffs do not sufficiently allege municipal liability.  The Court addresses each basis for Plaintiffs' § 1983 claim in turn.[7]

---

    [7] Plaintiffs appear to allege the City violated Plaintiffs' rights under the Hawai`i Constitution, but Plaintiffs do not cite to any provisions of the Hawai`i Constitution to support their claim.  To the extent that Plaintiffs bring § 1983 claims based on alleged violations of the Hawai`i Constitution, those claims "fail because state constitutional claims are not covered by Section 1983."  Gonzalez v. Okagawa, Civil No. 12-00368 RLP, 2013 WL 2423219, at *9 (D. Hawai`i June 4, 2013) (some citations omitted) (citing Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998)).  To the extent that Plaintiffs bring claims directly under the Hawai`i Constitution, this Court "declines to infer or create such a cause of action," because "Plaintiff[s] do[] not offer any legal authority that such an action is cognizable."  See id. at *10.

A.    **Section 1983 Claim Arising from 2009 Reverse Mortgage**

Plaintiffs bring a § 1983 claim against the City under the theory that Katherine prevented Florence from enjoying meaningful access to the courts when Katherine concealed information, lied in depositions and at trial, and created false documents relating to the 2009 reverse mortgage civil case.  See Second Amended Complaint at ¶ 70.

Plaintiffs and the City both address the issue of whether equitable estoppel applies to this claim.  However, the dispute is academic because Plaintiffs' claim is not ripe for judicial consideration.  "The Supreme Court held long ago that the right of access to the courts is a fundamental right protected by the Constitution."  Delew v. Wagner, 143 F.3d 1219, 1222 (9th Cir. 1998) (citing Chambers v. Baltimore & Ohio R.R. Co., 207 U.S. 142, 148, 28 S. Ct. 34, 35, 52 L. Ed. 143 (1907)).  To prevail on this claim, Plaintiffs must allege Katherine's "cover-up violated their right of access to the courts by rendering '**any** available state court remedy ineffective.'"  See id. at 1222–23 (emphasis added) (quoting Swekel v. City of River Rouge, 119 F.3d 1259, 1264 (6th Cir. 1997)).

Plaintiffs state their motion for a new trial in the 2009 reverse mortgage civil case was granted because they presented evidence that Katherine committed fraud upon the state court.  See Second Amended Complaint at ¶ 80.  Because the

motion for a new trial was granted, Plaintiffs have an available state remedy – to retry the case.  Therefore, the underlying litigation over the 2009 reverse mortgage has not concluded.  In other words, Plaintiffs "cannot yet show the extent to which they were injured as a result of [Katherine's] alleged misconduct."  See Madrigal v. City of Santa Maria, No.CV 10-4479 PSG (VBKx), 2011 WL 486559, at *6 (C.D. Cal. Feb. 7, 2011) (some citations omitted) (citing Morales v. City of Los Angeles, 214 F.3d 1151, 1154–55 (9th Cir. 2000)).  Accordingly, Plaintiffs' § 1983 access-to-courts claim stemming from the 2009 reverse mortgage case is dismissed without prejudice.  This claim is not ripe for judicial consideration "unless and until [the state] proceedings are concluded adversely to Plaintiffs."  See id. (footnote omitted).

**B.    Section 1983 Claim Arising from 2011 UED Conviction**

Although the Second Amended Complaint does not clearly allege the constitutional violation arising from Puana's 2011 UED conviction, Plaintiffs argue that Katherine abused her position as a deputy prosecutor, which denied Puana's right to adequate, effective, and meaningful access to the courts.  See Mem. in Opp. to City Motion at 17–18.  Specifically, Plaintiffs allege that, after Puana was arrested and transported from the scene, Katherine unlawfully entered Puana's residence and seized $15,000 in cash.  Puana was allegedly unable to pay for his bail

without the cash that was seized.  [Second Amended Complaint at
¶¶ 54, 57.]  Plaintiffs also allege that, between June 27, 2011
and September 6, 2011, Katherine used her position to have the
sheriffs transport Puana to state court so she could meet with
him and attempt to convince him that his UED case could be
favorably resolved if he enrolled in a drug treatment program.
[Id. at ¶¶ 58-59.]  Around November 2013, Katherine also
directed personnel at the prosecutor's office to (1) oppose
Puana's motion to dismiss his deferred acceptance of no contest
plea and (2) argue the court should convert Puana's deferred
acceptance of no contest plea into a felony conviction.  [Id. at
¶67.]

　　　　Thus, it appears that Plaintiffs assert a § 1983
access-to-courts claim.  The City argues the statute of
limitations has expired on this claim and equitable estoppel is
not warranted.  The Court agrees.  The relevant statute of
limitations for claims brought under § 1983 is the forum state's
statute of limitations for personal injury actions.  Bird v.
Dep't of Hum. Servs., 935 F.3d 738, 743 (9th Cir. 2019)
(citation omitted).  The Hawai`i statute of limitations for
personal injury actions is two years.  Haw. Rev. Stat. § 657-7.
Although Hawai`i law determines the limitations period, federal
law determines when a civil rights claim accrues.  Bird, 935
F.3d 743 (quoting Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir.

2001)).  Under federal law, the "discovery rule" typically governs the accrual of § 1983 claims.  Id. (citations omitted).

Plaintiffs do not allege when they knew or had reason to know of the alleged constitutional violations stemming from the 2011 UED conviction.  However, it appears Puana knew in 2011 that he could not post bail and that Katherine attempted to enroll him in a drug treatment program.  [Second Amended Complaint at ¶¶ 57-58.]  Thus, to the extent that Plaintiffs allege a violation of Puana's right to meaningful access to courts based on this conduct, the statute of limitations for this claim expired sometime in 2013.  Although Plaintiffs do not allege when Puana knew that prosecuting attorneys attempted to change his deferred acceptance of his no contest plea into a felony conviction, Puana had reason to know in November 2013 because the prosecutors argued for the change in court.[8]  See id. at ¶ 67.  Plaintiffs do not contend otherwise.  Accordingly, to the extent that Plaintiffs allege a violation of Puana's right to meaningful access to courts based on this conduct, the statute of limitations expired on November 30, 2015, at the latest.  Because Plaintiffs did not file their original complaint until December 14, 2016, the access-to-courts claim associated with the UED conviction is time-barred.

---

[8] Plaintiffs do not allege that Puana's deferred acceptance of his no contest plea was changed into a felony conviction.

Plaintiffs argue the claim is timely because it is equitably estopped.  This Court has stated:

> Fraudulent concealment, also termed "equitable estoppel," tolls the statute of limitations when there is "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006) (internal citation and quotation marks omitted). Where equitable tolling is based on fraudulent concealment (i.e., equitable estoppel), the conduct constituting fraudulent concealment must be plead with the particularity required by Federal Rule of Civil Procedure 9(b).  Id.; see also Stejic v. Aurora Loan Services, LLC, 2009 WL 4730734, at *4 (D. Ariz. 2009).  To meet the pleading standard required by Rule 9(b), a plaintiff "must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1988) (internal citation omitted).

Molina v. OneWest Bank, FSH, 903 F. Supp. 2d 1008, 1023 (D. Hawai`i 2012) (citation omitted).  A plaintiff must allege the following elements of equitable estoppel: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." Est. of Amaro v. City of Oakland, 653 F.3d 808, 813 (9th Cir. 2011) (quoting Bolt v. United States, 944 F.2d 603, 609 (9th Cir. 1991)).  "Additionally, a party asserting equitable estoppel against the government must

33

also establish that (1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government's wrongful acts will cause a serious injustice; and (3) the public's interest will not suffer undue damage by imposition of estoppel." <u>Baccei v. United States</u>, 632 F.3d 1140, 1147 (9th Cir. 2011) (citations omitted).

Plaintiffs do not allege either Katherine or the City engaged in active conduct that prevented Plaintiffs from filing this claim.  Plaintiffs allege the City engaged in "affirmative acts," but, as Plaintiffs readily admit, those alleged acts were related to the 2009 reverse mortgage civil case – **not** the 2011 UED conviction.  <u>See</u> Mem. in Opp. to City Motion at 18.  Because Plaintiffs do not allege the City engaged in affirmative misconduct preventing Plaintiffs from filing their claim related to the 2011 UED conviction, their § 1983 claim must be dismissed.  The dismissal is without prejudice, however, because it may be possible to cure the defects through amendment.

**C.    Section 1983 Claims Arising
        <u>from 2013 Mailbox Theft Charge</u>**

As an initial matter, Plaintiffs allege the City is liable for two constitutional violations related to the mailbox theft prosecution.  First, they allege the City is liable for the violation of Puana's right to enjoy meaningful access to the courts.  Second, they argue the City is liable for the malicious

34

prosecution of Puana.  As to the first claim, "[c]laims for the denial of access to the courts may arise from the frustration or hinderance of a 'litigating opportunity yet to be gained' (forward-looking claim) or from the loss of a suit that cannot now be tried (backward-looking claim)." Davies v. Heick, CIV NO. 20-00173 LEK-RT, 2020 WL 2308641, at *3 (D. Hawai`i May 8, 2020) (quoting Christopher v. Harbury, 536 U.S. 403, 412-15 (2002)).  Plaintiffs do not allege a forward-looking claim or a backward-looking claim related to the 2013 mailbox theft prosecution.  That is, they do not allege Louis, Katherine, or any of the CIU officers prevented or frustrated Puana from pursing "future litigation." See Christopher, 536 U.S. at 415. Plaintiffs also do not allege a loss of a suit that cannot now be tried.  Nor can they because Puana's 2013 mailbox theft charge was dismissed with prejudice.  See Second Amended Complaint at ¶ 100.  Ultimately, Plaintiffs fail to allege an "underlying cause of action and its lost remedy." See Christopher, 536 U.S. at 416 (citation omitted).  Accordingly, Plaintiffs' access-to-courts claim related to the 2013 mailbox theft prosecution is dismissed.  Because amendment may potentially cure the claim's defects, the dismissal is without prejudice.

Next, the City argues Plaintiffs' § 1983 malicious prosecution claim should be dismissed because Plaintiffs fail to

plausibly allege municipal liability.  The Court first addresses whether Plaintiffs plausibly allege municipal liability, then it addresses whether Plaintiffs plausibly allege a malicious prosecution claim.

> A section 1983 plaintiff may establish municipal liability in one of three ways.  First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S. Ct. 2702, 2723, 105 L. Ed. 2d 598 (1989) (Jett) (internal quotation omitted); accord Monell [v. Dep't of Soc. Servs.], 436 U.S. [658,] 690-91, 98 S. Ct. [2018,] 2035-36 [(1978)].  Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 1298-99, 89 L. Ed. 2d 452 (1986) (Pembaur).  Whether a particular official has final policy-making authority is a question of state law.  See Jett, 491 U.S. at 737, 109 S. Ct. at 2723; City of St. Louis v. Praprotnik, 485 U.S. 112, 123-24, 108 S. Ct. 915, 924, 99 L. Ed. 2d 107 (1988) (plurality opinion) (Praprotnik).  Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  See Praprotnik, 485 U.S. at 127, 108 S. Ct. at 926.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (some citations omitted), *overruled on other grounds by* Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016).

Here, Plaintiffs do not allege the purported constitutional violation was committed pursuant to a formal government policy or longstanding practice or custom.  Instead, Plaintiffs argue the City is liable because an official with final policymaking authority either committed the constitutional violation or ratified a subordinate's unconstitutional actions and the basis for it.  See Mem. in Opp. to City Motion at 22–24.

### 1.   Whether an Official with Final Policymaking Authority Committed the Constitutional Violation

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembaur, 475 U.S. at 481–82 (footnote and citation omitted). "Whether an official has final policymaking authority is a question for the court to decide based on state law."  Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)).

Plaintiffs only allege Louis was an official with final policymaking authority who committed a constitutional violation.  See Second Amended Complaint at ¶ 15.  "As to

matters of police policy, the chief of police under some circumstances may be considered the person possessing final policy-making authority." Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996) (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)). Under Haw. Rev. Stat. § 52D-3, "[t]he chief of police shall have the powers and duties as prescribed by law, the respective county charter, and as provided by this chapter." Section 6-1601 of the Revised Charter of the City and County of Honolulu 1973 (Amended 2017 Edition) ("City Charter") states "[t]he chief of police shall be the administrative head of the police department." City Charter § 6-1604 governs the powers, duties, and functions of the chief of police. "The chief of police shall . . . detect[] and arrest . . . offenders" and "[t]rain, equip, maintain and supervise the force of police officers." City Charter § 6-1604(a), (b). Although the "chief [of police] shall serve at the pleasure of the police commission," City Charter § 6-1603(1), "neither the [police] commission nor its members shall interfere in any way with the administrative affairs of the department," City Charter § 6-1606(h).

Plaintiffs plausibly allege Louis had final policymaking authority as the police chief to direct the other police officer defendants to investigate and implicate Puana in the mailbox theft. Plaintiffs allege that, under Louis's

orders: (1) Nguyen falsely identified Puana as the person who stole the mailbox; (2) Calistro and Akagi, who were originally assigned to HPD's Homicide Division, were reassigned to investigate the mailbox theft; and (3) Hahn, Sellers, Nguyen, Silva, Calistro, and Akagi mishandled evidence, fabricated evidence, falsified reports, and otherwise failed to perform their normal duties in a professional manner. See Second Amended Complaint at §§ 88-89, 94-95. Louis's alleged orders to investigate and implicate Puana in the mailbox theft fell within the purview of the chief of police's authority - authority beginning and ending with him. Put differently, once Louis made the alleged orders, no one – not even the police commission – could overrule his orders.

The City states Louis did not possess final policymaking authority as to his alleged actions because his actions were in direct conflict with his authority to enforce the laws. See Mem. in Supp. of City Motion at 13. Specifically, the City contends that, because the City Charter required Louis to be responsible for the preservation of the peace and protection of the rights of persons and property, his actions violated the City Charter and, therefore, the City cannot be held liable. [Id. at 13-14.] The City's position is untenable. Under the City's view, any illegal act by an official would, in effect, preclude municipal liability because

the acts necessarily contravene the law.  Additionally, a
municipality could shield itself from liability for the
constitutional violations of its officials by implementing broad
policy statements forbidding illegal acts.  Such a position
would defeat the intended purpose of § 1983.

        Furthermore, the City relies on Roe v. City of
Waterbury, 542 F.3d 31 (2d Cir. 2008), to argue that it is not
liable for Louis's conduct.  [City Reply at 11-13.]  In Roe, the
Second Circuit held that the City of Waterbury was not liable
for the mayor's sexual abuse of a minor because such actions
"[were] not made for practical or legal reasons and [were] not
in any way related to the City[ of Waterbury's] interests."
Roe, 542 F.3d at 38 (internal quotation marks omitted).  The
Second Circuit also held that the mayor "acted neither pursuant
to nor within the authority delegated to him when he committed
the acts of sexual abuse."  Id. at 41.  First, Roe is not
binding on this Court.  Second, the reasoning in Roe does not
necessarily conflict with this Court's ruling.  Here, Plaintiffs
adequately allege Louis acted both pursuant to and within the
authority delated to him as the chief of police when he directed
officers to investigate Puana.  See Second Amended Complaint at
¶¶ 13-15, 88-89, 94-95; see also City Charter § 6-1604(b).
Also, unlike in Roe where the mayor's sexual abuse of a minor
was not related to the City of Waterbury's interests and,

instead, was "to advance a purely personal agenda," Roe, 542 F.3d at 41, in the instant case Louis's conduct was conceivably related to the City's interests insofar as its policing power was invoked to investigate an allege crime and to arrest a suspect.

Regardless, Pembaur supports the ruling that Plaintiffs have plausibly alleged that Louis acted with final policymaking authority in ordering officers to investigate and implicate Puana in the mailbox theft.  In Pembaur, the United States Supreme Court held that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  475 U.S. at 483–84 (citation omitted).  The Supreme Court concluded that the municipality was liable for the conduct of the country prosecutor because the county prosecutor, who possessed final decision-making authority to establish county policy, directed law enforcement to forcibly enter the plaintiff's premises.  Id. at 484–85.  Similarly, Louis, as the final decision-making authority concerning the administration of HPD, allegedly chose a deliberate course of action which included reassigning officers to investigate Puana, diverting police resources to investigate Puana, and otherwise ordering officers to implicate

Puana in the mailbox theft.  Accordingly, Plaintiffs have
sufficiently alleged that Louis acted with final policymaking
authority in directing officers to investigate and implicate
Puana in the mailbox theft.

### 2.  __Ratification__

The "ratification test is satisfied if a plaintiff can
prove that an official with final policy-making authority
ratified a subordinate's decision or action and the basis for
it."  Trevino, 99 F.3d 911, 920 (9th Cir. 1996) (citations and
internal quotation marks omitted).  "The policymaker must have
knowledge of the constitutional violation and actually approve
of it."  Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004).  "[A]
policymaker's mere refusal to overrule a subordinate's completed
act does not constitute approval."  Christie, 176 F.3d at 1239
(citations omitted).  The Supreme Court has stated:

> As our § 1983 municipal liability
> jurisprudence illustrates, however, it is not
> enough for a § 1983 plaintiff merely to identify
> conduct properly attributable to the
> municipality.  The plaintiff must also
> demonstrate that, through its **deliberate** conduct,
> the municipality was the "moving force" behind
> the injury alleged.  That is, a plaintiff must
> show that the municipal action was taken with the
> requisite degree of culpability and must
> demonstrate a direct causal link between the
> municipal action and the deprivation of federal
> rights.

Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404
(1997) (emphasis in Brown).  In other words, a § 1983 plaintiff

42

must establish "both but for and proximate causation."  See Tsao
v. Desert Palace, Inc., 698 F.3d 1128, 1146 (9th Cir. 2012)
(citation omitted).

     Plaintiffs allege the Police Commission, HPD, the
Ethics Commission, Kaneshiro, Corporation Counsel Donna Leong
("Leong"), and Mayor Kirk Caldwell ratified either Katherine or
Louis's unconstitutional actions.  See Second Amended Complaint
at ¶¶ 110, 129, 136, 159.

     As to the Police Commission, Plaintiffs allege that,
even though the Ethic's Commission had ongoing investigations
into Louis, the Police Commission: (1) reappointed Louis to a
five-year term in February 2014; (2) gave Louis an "exceeds
expectations" rating in his annual reviews in 2012, 2013, and
2014; (3) expressed confidence in Louis's character and
abilities in February 2015; and (4) refused to investigate Louis
in 2015 and 2016 even after the mistrial in Puana's mailbox
theft prosecution and Silva's guilty plea.  See id. at ¶¶ 98,
102–104.  Plaintiffs allege the Police Commission had final
policymaking authority under the City Charter.  See, e.g., id.
at ¶¶ 36–38, 159.  But, even if the Police Commission had final
policymaking authority to investigate and remove Louis, see City
Charter § 6-1603(1), (2), Plaintiffs fail to allege that the
Police Commission knew of Louis's alleged unconstitutional
actions.  For example, according to Plaintiffs, a day after

43

Louis received a target letter from the United States Attorney's Office informing him that he was the target of a federal grand jury corruption investigation, the Police Commission placed Louis on paid administrative leave. [Second Amended Complaint at ¶¶ 105–06.] Further, Plaintiffs fail to adequately allege how the Police Commission's approval of Louis's severance package, which included a "good standing" rating with HPD, constitutes ratification of Louis's conduct **and the basis for it.**

Also fatal to Plaintiffs' claim is the lack of allegations that the Police Commission engaged in "**deliberate** action[s]" that "directly caused a deprivation of [Puana's] federal rights." See Brown, 520 U.S. at 415 (emphasis in Brown). The federal mailbox theft charge against Puana was dismissed with prejudice on December 15, 2014. [Second Amended Complaint at ¶ 100.] Thus, any statements or actions after that date could not have caused, or contributed to, the malicious prosecution of Puana. The only alleged actions the Police Commission engaged in prior to that date were the reappointment of Louis as chief of police in February 2014 and the rating of "exceeds expectations" on Louis's annual evaluation.[9] See id. at

---

[9] Plaintiffs do not allege when the annual evaluation took place other than claiming it occurred sometime in 2014, but the Court assumes, for purposes of the City Motion, that it occurred
(. . . continued)

¶¶ 98, 102.  Yet, Plaintiffs do not allege that the Police Commission either knew of Louis's misconduct at the time of those events or that Louis's reappointment and annual evaluation rating was connected to his misconduct in any way.  Any actions occurring after the dismissal of Puana's charge could not be a but for or proximate cause of the malicious prosecution.  To hold the Police Commission liable for Louis's actions under these circumstances would be a "fail[ure] to adhere to rigorous requirements of culpability and causation" such that "municipal liability [would] collapse[] into *respondeat superior* liability."  See Brown, 520 U.S. at 415.  Plaintiffs' ratification argument regarding the Police Commission therefore fails.

Plaintiffs' ratification arguments regarding the others fair no better, for similar reasons.  Plaintiffs fail to allege HPD had final policymaking authority to ratify any conduct.  Furthermore, the alleged actions constituting ratification by the Ethics Commission, Kaneshiro, and Leong, occurred **after** Puana's federal charge was dismissed.  See Second Amended Complaint at ¶¶ 115, 118, 124, 129 (alleging the Ethics Commission started to investigate Louis in 2015 and allegedly frustrated further investigations); ¶¶ 135–36 (alleging

before Puana's federal mailbox theft charge was dismissed in December 2014.

45

Kaneshiro made statements supporting Katherine in 2016); ¶¶ 107–08 (alleging Leong approved of Louis's severance package in 2017).  As such, Plaintiffs fail to allege these actors were the but for and proximate cause of Puana's constitutional violation.  Finally, other than stating in a conclusory fashion that Mayor Caldwell ratified Louis and Katherine's conduct, Plaintiffs do not allege any facts relating to Mayor Caldwell either possessing final policymaking authority or ratifying a constitutional violation and the basis for it.  See id. at ¶ 159.  Accordingly, Plaintiffs' claim that the City is liable under a theory of ratification fails.

### 3. Malicious Prosecution Claim

Because Plaintiffs only plausibly allege the City is potentially liable for Louis's actions under § 1983, the Court analyzes Plaintiffs' malicious prosecution claim as it relates to Louis's involvement in Puana's 2013 federal charge for mailbox theft.

> Section 1983
>
> creates a cause of action for "the deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" by individuals acting "under color of" law.  42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v.

Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)).

Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021) (alterations in Benavidez).

This district court has stated:

> In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show "that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Lacey v. Maricopa Cnty., 693 F.3d 896, 919 (9th Cir. 2012) (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)). "In general, a claim of malicious prosecution is not cognizable under § 1983 'if process is available within the state judicial systems' to provide a remedy," although the Ninth Circuit has "held that an exception exists . . . when a malicious prosecution is conducted with the intent to . . . subject a person to a denial of constitutional rights." Id. (quoting Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc)). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1126–27 (9th Cir. 2002)).
>
> The court must look to Hawaii law "to determine the legal effect of the state court's action because [the Ninth Circuit has] incorporated the relevant elements of the common law tort of malicious prosecution into [the] analysis under § 1983." Id. "Under Hawaii law, a grand jury [] functions to determine whether probable cause exists [and] [t]here is also a presumption that the grand jury acted upon sufficient and legal evidence." McCarthy v. Mayo, 827 F.2d 1310, 1317 (9th Cir. 1987) (citing Hawaii v. Jenkins, 1 Haw. App. 430, 620 P.2d 263,

> 267 (1980)); see also Hawaii v. Apao, 59 Haw.
> 625, 637–38, 586 P.2d 250, 259 (1978) (providing
> that the burden is on the plaintiff to present
> evidence that the grand jury deliberations were
> so infected as to invalidate the indictment).

Andrews v. Hawaii Cnty., Civil No. 11-00512 JMS/BMK, 2013 WL

5276533, at *9 (D. Hawai`i Sept. 18, 2013) (alterations in

Andrews) (footnote omitted).  Additionally, "[a]n individual

seeking to bring a malicious prosecution claim must generally

establish that the prior proceedings terminated in such a manner

as to indicate his innocence."  Awabdy, 368 F.3d at 1068 (citing

Heck v. Humphrey, 512 U.S. 477, 484–85, 114 S. Ct. 2364 (1994)).

Plaintiffs have plausibly alleged a malicious

prosecution claim.  Plaintiffs allege Puana's prosecution was

not based on probable cause because the mailbox theft was staged

by Louis and Katherine, and the evidence implicating Puana was

fabricated.  Although Puana was indicted by a federal grand jury

in the mailbox theft, which presents a presumption of probable

cause, Plaintiffs adequately allege the indictment was based on

false statements or reports and fabricated evidence.  See Second

Amended Complaint at ¶¶ 95–96.  Plaintiffs have met their burden

at this stage to allege "that the grand jury deliberations were

so infected as to invalidate the indictment."  See Apao, 59 Haw.

at 637, 586 P.2d at 259 (quotation marks and citations omitted),

superseded by statute on other grounds as stated in State v.

Kato, 147 Hawai`i 478, 499, 465 P.3d 925, 946 (2020).  Moreover,

Plaintiffs sufficiently allege Puana was prosecuted with malice because they allege Louis implicated Puana in the mailbox theft to discredit him regarding the 2009 reverse mortgage civil suit. See Second Amended Complaint at ¶¶ 85, 101.

Plaintiffs also allege Puana was prosecuted for the purpose of denying him a specific constitutional right. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'" Manuel v. City of Joliet, 137 S. Ct. 911, 917 (2017) (alterations in Manuel). More specifically, "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process[.]" Id. at 920. Here, Plaintiffs plausibly allege Puana's Fourth Amendment rights were violated because he was unlawfully seized and detained until his case was dismissed with prejudice. See Second Amended Complaint at ¶ 2; id. at pg. 40, ¶ 118. Finally, Plaintiffs adequately allege Puana's federal case terminated in such a manner as to indicate his innocence. According to Plaintiffs, Louis knowingly and deliberately gave perjured testimony causing a mistrial in Puana's federal criminal case. [Id. at ¶ 99.] After the mistrial, the United States Attorney's Office filed a motion to dismiss Puana's federal charge with prejudice, and the motion was granted. [Id. at ¶ 100.] Plaintiffs therefore plausibly allege the City is liable for a malicious prosecution

49

claim stemming from Louis's conduct to implicate Puana in the federal mailbox theft charge.

### D.   Summary

Plaintiffs' § 1983 claims related to the 2009 reverse mortgage and 2011 UED conviction are dismissed without prejudice.  Plaintiffs' § 1983 access-to-courts claim stemming from the 2013 mailbox theft charge is also dismissed without prejudice.[10]  Plaintiffs' § 1983 malicious prosecution claim related to Puana's 2013 mailbox theft charge is dismissed without prejudice, insofar as Plaintiffs seek liability against the City for conduct by anyone other than Louis.  However, the City's Motion is denied as to Plaintiffs' malicious prosecution claim against the City arising from Louis's conduct related to Puana's 2013 mailbox theft charge.

### CONCLUSION

On the basis of the foregoing, the Court GRANTS IN PART AND DENIES IN PART: Hahn's Motion to Dismiss, filed August 16, 2021; Nguyen's Motion to Dismiss Second Amended Complaint [Doc. 207], filed September 23, 2021; and the City's

---

[10] Because the § 1983 claims related to the 2009 reverse mortgage and 2011 UED conviction, and the § 1983 access-to-courts claim related to the 2013 mailbox theft charge were dismissed without addressing municipal liability, the Court makes no findings or conclusions about municipal liability as to those claims at this stage.

Motion to Dismiss Second Amended Complaint (ECF 207), filed August 24, 2021.

The Hahn Motion is GRANTED to the extent that the IIED, civil RICO, and defamation claims against Hahn are dismissed, but the Hahn Motion is DENIED insofar as the claims are dismissed WITHOUT PREJUDICE.

The Nguyen Motion is GRANTED to the extent that the civil RICO claim and the IIED claim relating to Nguyen's 2011 conduct are DISMISSED WITHOUT PREJUDICE, but the Nguyen Motion is DENIED as to Plaintiffs' defamation claim and their IIED claim based on Nguyen's 2013 false identification of Puana.

The City Motion is GRANTED to the extent that: (1) the § 1983 claims based on the 2009 reverse mortgage and the 2011 UED conviction are DISMISSED; (2) the § 1983 access-to-courts claim related to the 2013 mailbox theft charge is DISMISSED; and (3) the § 1983 malicious prosecution claims related to the 2013 mailbox theft charge, except for the claim based on Louis's conduct, are DISMISSED.  The City Motion is DENIED, however, insofar as the dismissals of the § 1983 access-to-courts and malicious prosecution claims are WITHOUT PREJUDICE, and the City Motion is DENIED as to Plaintiffs' § 1983 claim for malicious prosecution against the City based on Louis's conduct related to in the 2013 mailbox theft charge.

Plaintiffs are GRANTED leave to file their third amended complaint by **March 30, 2022.**  Plaintiffs' leave to amend is limited to addressing the defects in the claims addressed in this Order.  If Plaintiffs choose not to file a third amended complaint, the case will proceed as to the remaining claims in the Second Amended Complaint.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 28, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

GERARD K. PUANA, ET AL. VS. KATHERINE P. KEALOHA, ET AL.; CV 16-00659 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART THE MOTIONS TO DISMISS