UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| GERARD K. PUANA, RICKY L. HARTSELL, AS TRUSTEE OF THE FLORENCE M. PUANA TRUST, <br><br>    Plaintiffs, <br><br>  vs. <br><br> KATHERINE P. KEALOHA, LOUIS M. KEALOHA, MINH-HUNG NGUYEN, MINH-HUNG "BOBBY" NGUYEN, DANIEL SELLERS, NIALL SILVA, WALTER CALISTRO, DRU AKAGI,  JOHN AND/OR JANE DOES 1-50, DEREK WAYNE HAHN, <br><br>    Defendants. | CIV. NO. 16-00659 LEK-WRP |

**ORDER GRANTING DEFENDANT DRU AKAGI'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Dru Akagi's ("Akagi")
Motion for Summary Judgment ("Motion"), filed September 28,
2022.[1] [Dkt. no. 370.]  On November 17, 2022, Defendant City and
County of Honolulu filed a statement of no position.  [Dkt.
no. 388.]  On November 18, 2022, Plaintiffs Gerard K. Puana
("Puana") and Ricky L. Hartsell as Trustee of the Florence M.
Puana Trust (collectively "Plaintiffs") filed their memorandum
in opposition.  [Dkt. no. 390.]  Akagi filed his reply on
November 25, 2022.  [Dkt. no. 395.]  The Motion came on for
hearing on December 9, 2022.  [Minutes, filed 12/9/22 (dkt.

---

[1] Akagi filed his Motion in his individual capacity.

no. 411).]  The Motion is hereby granted for the reasons set
forth below.

## BACKGROUND

In June 2013, Akagi was assigned to the Honolulu
Police Department's ("HPD") Homicide Detail, Criminal
Investigative Division ("CID").  [Akagi's Separate and Concise
Statement of Facts in Support of Defendant Dru Akagi's Motion
for Summary Judgment ("Akagi's CSOF"), filed 9/28/22 (dkt.
no. 372), at ¶ 1; Plaintiffs' Reply to Defendant Dru Akagi's
Concise Statement of Material Facts in Support of Motion for
Summary Judgment and Plaintiffs' Concise Statement of Material
Facts ("Plaintiffs' Responsive CSOF"), filed 11/18/22 (dkt.
no. 391), at ¶ 1 (admitting Akagi's CSOF ¶ 1).[2]]  On June 25,
2013, Defendant Walter Calistro ("Calistro") – Akagi's
supervisor – assigned Akagi as the lead CID detective to
investigate the theft of a mailbox at former HPD Chief of Police
Louis Kealoha's ("Louis") house.  [Akagi's CSOF at ¶ 2;
Plaintiffs' Responsive CSOF at ¶ 2; Exh. A (Partial Transcript
of Jury Trial - Day 2 (Testimony of Dru Akagi) in United States
v. Katherine P. Kealoha, et al., CR 17-00582 JMS-RLP, taken
5/23/19 ("Akagi Trans.")) at 6-7.]  Former Defendant Derek Wayne

---

[2] "Plaintiffs' Responsive CSOF" refers to Section I of
docket number 391.  Section II sets forth Plaintiffs' Concise
Statement of Facts and will be referred to as "Plaintiffs'
CSOF."

Hahn ("Hahn"), who worked as a member of the Criminal Intelligence Unit ("CIU"), briefed Akagi on the mailbox theft case, and Hahn told Akagi that Puana was a person of interest. Defendant Niall Silva ("Silva"), another member of the CIU, gave Akagi surveillance video clips of the mailbox theft.  [Akagi's CSOF at ¶¶ 3-4; Plaintiffs' Responsive CSOF at ¶¶ 3-4.]

On June 28, 2013, Akagi interviewed Carrie Arakaki ("Arakaki"), who was Puana's next-door neighbor.  [Plaintiffs' CSOF at ¶ 9; Akagi's Reply to Plaintiffs' Concise Statement of Material Facts ("Akagi's Responsive CSOF"), filed 11/25/22 (dkt. no. 396), at ¶ 9 (admitting Plaintiffs' CSOF ¶ 9).]  Arakaki owned a vehicle that Akagi thought resembled the vehicle in the video footage of the mailbox theft, but Araki told Akagi that the car in the video footage was not hers.  See Plaintiffs' CSOF at ¶¶ 12, 11; Akagi's Responsive CSOF at ¶¶ 12, 11.

On June 29, 2013, Akagi met with Defendant Katherine P. Kealoha ("Katherine") and showed her the video footage.  Katherine told Akagi that Puana was the person in the video stealing the mailbox.  Katherine submitted an official police form identifying Puana as the person stealing the mailbox in the video.  [Akagi's CSOF at ¶¶ 5-7; Plaintiffs' Responsive CSOF at ¶¶ 5-7.]  "Akagi eliminated [Puana]'s alibi during the relevant time period when the Kealoha's mailbox was stolen." [Akagi's CSOF at ¶ 9; Plaintiffs' Responsive CSOF at ¶ 9.]  On

3

July 1, 2013, Akagi transferred the case to the United States Postal Service ("USPS") and completed his closing report on July 2, 2013.  [Akagi's CSOF at ¶ 10; Plaintiffs' Responsive CSOF at ¶ 10.]  Akagi listed Arakaki's vehicle as a suspect vehicle in his closing report.  See Plaintiffs' CSOF, Decl. of Alexander Silvert ("Silvert Decl."), Exh. K (C.I.D. Closing Report) at 3.

In the criminal case against Katherine, Akagi testified as a government witness that he relied on Katherine's identification of Puana in recommending criminal charges.  See Akagi's CSOF at ¶¶ 15-16; Plaintiffs' Responsive CSOF at ¶¶ 15-16.  During the instant case, Puana testified during his deposition that he does not have a basis to state Akagi acted with malice during his investigation.  [Akagi's CSOF at ¶ 19; Plaintiffs' Responsive CSOF at ¶ 19.]

Plaintiffs allege the following claims against Akagi in his individual capacity: (1) a malicious prosecution claim under 42 U.S.C. § 1983 ("Count I"); (2) a racketeering claim under 18 U.S.C. § 1962(c) ("Civil RICO claim" and "Count II"); (3) a claim for intentional infliction of emotional distress ("IIED" and "Count III"); and (4) a defamation claim ("Count IV").  See Third Amended Complaint for Damages, filed 5/13/22 (dkt. no. 307), at ¶¶ 185-99.  Although Plaintiffs both assert Counts I through IV against Akagi, the actions only arise

out of conduct affecting Puana.  Thus, although the Court refers

to Plaintiffs as bringing the claims, it is clear that Puana is

the individual asserting those claims against Akagi.

**DISCUSSION**

**I.   Defamation Claim (Count IV)**

Akagi states Plaintiffs are no longer asserting the

defamation claim against him because Plaintiffs' counsel

confirmed through email that the claim is time-barred.  See

Motion, Mem. in Supp. at 1 (citing Akagi's CSOF, Decl. of

Nicholas P. Ching ("Ching Decl."), Exhibit H).  Plaintiffs

neither contest Akagi's statement in their opposition nor

provide evidence to negate Akagi's evidence.  Because

Plaintiffs' counsel concede that their defamation claim against

Akagi is time barred, no genuine issue of material fact exists

and Akagi is entitled to judgment as a matter of law as to

Count IV.  See Fed. R. Civ. P. 56(a) ("The court shall grant

summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law.").

**II.  Malicious Prosecution Claim (Count I)**

    **A.   Probable Cause**

In order to prevail on a § 1983 claim of
malicious prosecution, a plaintiff must show
"that the defendants prosecuted [him] with malice
and without probable cause, and that they did so
for the purpose of denying [him] equal protection

or another specific constitutional right." Lacey
v. Maricopa Cnty., 693 F.3d 896, 919 (9th Cir.
2012) (quoting Freeman v. City of Santa Ana, 68
F.3d 1180, 1189 (9th Cir. 1995)).  "In general, a
claim of malicious prosecution is not cognizable
under § 1983 'if process is available within the
state judicial systems' to provide a remedy,"
although the Ninth Circuit has "held that an
exception exists . . . when a malicious
prosecution is conducted with the intent to . . .
subject a person to a denial of constitutional
rights." Id. (quoting Bretz v. Kelman, 773 F.2d
1026, 1031 (9th Cir. 1985) (en banc)).
"Malicious prosecution actions are not limited to
suits against prosecutors but may be brought, as
here, against other persons who have wrongfully
caused the charges to be filed." Awabdy v. City
of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004)
(citing Galbraith v. Cnty. of Santa Clara, 307
F.3d 1119, 1126–27 (9th Cir. 2002)).

> The court must look to Hawaii law "to
> determine the legal effect of the state court's
> action because [the Ninth Circuit has]
> incorporated the relevant elements of the common
> law tort of malicious prosecution into [the]
> analysis under § 1983." Id. . . .

Andrews v. Hawaii Cnty., Civil No. 11-00512 JMS/BMK, 2013 WL

5276533, at *9 (D. Hawai`i Sept. 18, 2013) (some alterations in

Andrews) (footnote omitted).[3]  "An individual seeking to bring a

malicious prosecution claim must generally establish that the

prior proceedings terminated in such a manner as to indicate his

innocence." Awabdy, 368 F.3d at 1068 (some citations omitted)

---

[3] In Andrews, the plaintiff was prosecuted in state court.
See 2013 5276533, at *3.  Here, Puana was prosecuted for the
mailbox theft in federal court.  However, Andrews and Hawai`i
law still apply because Akagi was a county police officer at the
time he recommended that Puana be federally prosecuted.

(citing <u>Heck v. Humphrey</u>, 512 U.S. 477, 484–85, 114 S. Ct. 2364 (1994)).

Under Hawai`i law,

Probable cause in a malicious prosecution action depends "not on the actual state of the facts but upon the honest and reasonable belief of the party commencing the action." <u>Brodie [v. Haw. Auto. Retail Gasoline Dealers Ass'n]</u>, 2 Haw. App. [316,] 318, 631 P.2d [600,] 602 [(1981)] (citations omitted).[4]

[P]robable cause for the filing of a lawsuit exists where a person:

reasonably believes in the existence of the facts upon which the claim is based, and either

(a)  correctly or reasonably believes that under those facts the claim may be valid under the applicable law, or

(b)  believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge or information.

<u>Id.</u> at 319, 631 P.2d at 602 (quoting Restatement (Second) of Torts § 675 (1977)).  The determination as to whether a particular party had probable cause is both a subjective and objective question.  <u>See, e.g.</u>, <u>Bertero v. Nat'l Gen. Corp.</u>, 13 Cal. 3d 43, 118 Cal. Rptr. 184, 193, 529 P.2d 608 (1974); <u>Williams v. City of New York</u>, 508 F.2d 356, 359 (1974).  The first question is whether the party had the subjective belief that he or she possessed probable cause in the underlying action.  The second question is whether that belief was reasonable.

---

    4 <u>Brodie</u>, 6 Haw. App. 316, 631 P.2d 600, was reversed by the Hawai`i Supreme Court on other grounds.  65 Haw. 598, 655 P.2d 863 (1982).

Arquette v. State, 128 Hawai`i 423, 434, 290 P.3d 493, 504
(2012) (some alterations in Arquette).

　　　　Akagi was provided with the surveillance video of the
purported mailbox theft and, when he showed it to Katherine, she
told Akagi that Puana was the person in the video stealing the
mailbox.  Katherine then filed an official report identifying
Puana as the person who stole the mailbox.  See Akagi's CSOF at
¶¶ 3-7; Plaintiffs' Responsive CSOF at ¶¶ 3-7.  "Akagi
eliminated [Puana]'s alibi during the relevant time period when
the Kealoha's mailbox was stolen."  [Akagi's CSOF at ¶ 9;
Plaintiffs' Responsive CSOF at ¶ 9.]

　　　　Plaintiffs argue Akagi began to investigate Puana
before Katherine identified him and, therefore, there is a
genuine dispute of material fact as to whether Akagi was a part
of the malicious prosecution of Puana.  See Mem. in Opp. at 7.
Plaintiffs aver, however, that Hahn told Akagi Puana was a
person of interest on June 25, 2013, see Plaintiffs' CSOF at
¶ 5; Akagi's Responsive CSOF at ¶ 5, which was four days before
Katherine identified Puana, see Akagi's CSOF at ¶ 5; Plaintiffs'
Responsive CSOF at ¶ 5.  The Court rules that, even considering
"the evidence in the light most favorable to Plaintiffs as the
nonmoving parties," see Harris v. Cnty. of Orange, 17 F.4th 849,
855 (9th Cir. 2021) (brackets, quotation marks, and citation

8

omitted), Akagi had a reasonable belief, based on Hahn's representations, that Puana was a person of interest. Plaintiffs' challenge to Akagi's closing report, <u>see</u> Mem. in Opp. at 8, where Akagi listed Arakaki's vehicle as a suspect vehicle, <u>see</u> Silvert Decl., Exh. K at 3, does not create a genuine issue of material fact as to whether Akagi had probable cause in sending the case to the USPS.  Although Akagi's closing report failed to eliminate Arakaki's vehicle as a suspect vehicle, this failure does not negate the other reasons for Akagi having probable cause to seek prosecution.  The closing report was sent to USPS, which completed its own report and recommended the federal prosecution of Puana.  <u>See</u> Plaintiffs' CSOF at ¶ 17; Akagi's Responsive CSOF at ¶ 17.

Akagi relied on information from Hahn and Katherine, along with other information, to complete his closing report which was sent to USPS.  Akagi was assigned to the case on June 25, 2013 and completed his closing report on July 2, 2013. <u>See</u> Akagi's CSOF at ¶¶ 2, 10; Plaintiffs' Responsive CSOF at ¶¶ 2, 10.  In the federal prosecution of Katherine, Akagi testified as a government witness that he relied on Katherine's positive identification of Puana to recommend criminal charges against Puana.  <u>See</u> Akagi's CSOF at ¶¶ 15-16; Plaintiffs' Responsive CSOF at ¶¶ 15-16.

Accordingly, no genuine issue of material fact exists, and this Court concludes, as a matter of law, that Akagi had probable cause to recommend criminal charges and to send the closing report to USPS.

**B.**   **Malice**

Even if there was a genuine issue of material fact as the issue of probable cause, Akagi would still be entitled to summary judgment because the Court also finds that Plaintiffs fail to raise a genuine issue of material fact that Akagi acted with malice.

To avoid summary judgment, a plaintiff must "produce some affirmative evidence that malice existed." Arquette, 128 Hawai`i at 437, 290 P.3d at 507 (quotation marks and citation omitted).  "[I]n order to establish the element of malice for a malicious prosecution claim, a plaintiff must show *inter alia* that the defendant initiated the prior proceeding with the intent, without justification or excuse, to commit a wrongful act and the emphasis is on the misuse of criminal or civil actions as a means for causing harm."  Id. (quotation marks and citation omitted).

Plaintiffs argue the fact that "Akagi acted with malice can be inferred from his actions from the lack of probable cause to charge Gerard Puana with stealing the mailbox."  [Mem. in Opp. at 8.]  Akagi had sufficient basis to

10

establish probable cause, and Plaintiffs do not provide any evidence to create a genuine issue of fact as to whether that Akagi acted with malice.  Indeed, during Puana's May 27, 2022 deposition, Puana testified that he did not have a basis to claim Akagi acted with malice during the investigation.  See Akagi's CSOF at ¶ 19; Plaintiffs' Responsive CSOF at ¶ 19.

Because Plaintiffs do not raise a genuine issue of material fact as to probable cause and malice, the Court concludes that Akagi is entitled to judgment as a matter of law as to Count I and, therefore, it does not to address Akagi's qualified immunity argument.

### III. **Civil RICO Claim (Count II)**

"The Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. §§ 1961-1968, provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions."  Bridges v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008) (quoting 18 U.S.C. § 1964(c)).

Under 18 U.S.C. § 1962(c),

[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

11

"Broadly speaking, there are two parts to a civil RICO claim."  Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co., 943 F.3d 1243, 1248 (9th Cir. 2019) ("Painters").  There is "[t]he civil RICO violation . . . defined under 18 U.S.C. § 1962," then there is "'RICO standing' . . . defined under 18 U.S.C. § 1964(c)."  Id.  The former aspect "sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt."  Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)).  The latter aspect – RICO standing – requires that "a plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation."  Painters, 943 F.3d at 1248 (citation and some internal quotation marks omitted).

> To show the existence of an enterprise . . ., plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose.  Boyle v. United States, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009).  Racketeering activity, the fourth element, requires predicate acts . . . .

Eclectic Props. E., 751 F.3d at 997.  In explaining predicate acts, the United Supreme court has held:

> [P]redicates include any act "indictable" under specified federal statutes, §§ 1961(1)(B)-(C),

12

(E)–(G), as well as certain crimes "chargeable"
under state law, § 1961(1)(A), and any offense
involving bankruptcy or securities fraud or drug-
related activity that is "punishable" under
federal law, § 1961(1)(D).  A predicate offense
implicates RICO when it is part of a "pattern of
racketeering activity"—a series of related
predicates that together demonstrate the
existence or threat of continued criminal
activity.  H.J. Inc. v. Northwestern Bell
Telephone Co., 492 U.S. 229, 239 (1989); see
§ 1961(5) (specifying that a "pattern of
racketeering activity" requires at least two
predicates committed within 10 years of each
other).

RJR Nabisco, Inc. v. Eur. Cmty., 579 U.S. 325, 330 (2016).

### A.    Pattern of Racketeering Activity

Akagi first argues Plaintiffs' RICO claim must fail
because they cannot prove that Akagi engaged in a pattern of
racketeering activity.  See Motion, Mem. in Supp. at 13.
Specifically, Akagi contends that Plaintiffs do not provide
evidence of two predicate acts.  See id.  Plaintiffs argue the
pattern of racketeering activity began in 2011 and continued
into 2014.  See Mem. in Opp. at 13.  Even if the racketeering
activity began in 2011 and continued into 2014, Plaintiffs fail
to provide evidence that Akagi participated in the racketeering
activity beyond the eight days he investigated the mailbox
theft, which included sending the closing report to the USPS and
recommending criminal charges, see Akagi's CSOF at ¶¶ 2, 10;
Plaintiffs' Responsive CSOF at ¶¶ 2, 10.  See, e.g., Zazzali v.
Ellison, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013) ("[T]he

13

touchstone of [§ 1962(c)] is that each individual defendant must be shown to have personally participated in a pattern of racketeering activity."). Moreover, such a short period of time cuts against a finding of a pattern of racketeering activity. See H.J. Inc., 492 U.S. at 242 ("A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.").

Even assuming that Akagi's recommendation of criminal charges constituted a predicate act, no genuine issue of material fact has been raised as to the issue of whether Akagi participated in a second predicate act. Plaintiffs appear to argue that the predicate act or acts continued through December 2014 when Puana was tried in the criminal case for mailbox theft. See Mem. in Opp. at 13. Again, though, Plaintiffs do not provide evidence of any acts taken by Akagi that constitute subsequent predicate acts. Thus, Plaintiffs' RICO claim against Akagi fails.

**B.  RICO Standing**

For the sake of completeness, the Court will also address whether there is a genuine issue of material fact as to

14

RICO standing.  Akagi argues Plaintiffs fail to demonstrate

proof of concrete financial loss, *i.e.*, Plaintiffs lack RICO

standing.  See Motion, Mem. in Supp. at 15; see also Painters,

943 F.3d at 1248.  The Court finds that Plaintiffs fail to raise

a genuine issue of material fact as to their RICO standing for

two reasons.

First, Plaintiffs fail to show that Akagi's conduct

was the proximate cause of his injury.

> "[a] plaintiff must show that the defendant's
> RICO violation was not only a 'but for' cause of
> his injury, but that it was a proximate cause as
> well." Oki Semiconductor Co. v. Wells Fargo
> Bank, Nat. Ass'n, 298 F.3d 768, 773 (9th Cir.
> 2002) (citing Holmes v. Sec. Inv'r Prot. Corp.,
> 503 U.S. 258, 268-69, 112 S. Ct. 1311, 117 L. Ed.
> 2d 532 (1992)).  "Some 'direct relationship'
> between the injury asserted and the injurious
> conduct is necessary." Oki Semiconductor Co.,
> 298 F.3d at 773 (quoting Holmes, 503 U.S. at 269,
> 112 S .Ct. 1311).  "To establish proximate cause,
> plaintiffs must show that their injury flows
> directly from the defendants' commission of the
> predicate acts." Pedrina v. Chun, 906 F. Supp.
> 1377, 1415 (D. Haw. 1995) (citation omitted).

Ryan v. Salisbury, 382 F. Supp. 3d 1031, 1056 (D. Hawai`i 2019)

(alteration in Ryan).  Here, Plaintiffs concede that Akagi

transferred the case to USPS on July 1, 2013 and Puana was

federally charged the same day, which was a day before Akagi

completed his closing report.  See Akagi's CSOF at ¶ 10;

Plaintiffs' Responsive CSOF at ¶ 10.  Thus, to the extent that

Plaintiffs argue Akagi's closing report led to Puana's false

arrest, Puana was arrested and federal criminal charges were filed against him before Akagi finished his closing report and, therefore, the closing report could not be a proximate cause of Puana's injury.

Second, Plaintiffs fail to provide any evidence that Puana suffered a concrete financial loss. Although Plaintiffs state Puana's economic loss stems from Akagi's tortious interference with Puana's prospective business advantage, see Mem. in Opp. at 14-15, Plaintiffs do not cite to anything in the record to support such a claim. Plaintiffs also state Puana testified to such economic loss, see Mem. in Opp. at 15, but, again, they do not provide any evidence. Accordingly, Plaintiffs do not raise a genuine issue of material fact as to whether they have RICO standing and, therefore, Akagi is entitled to judgment as a matter of law as to Count II.

## IV. IIED Claim (Count III)

### A. Statute of Limitations

Akagi argues Plaintiffs' IIED claim is time-barred. See Motion, Mem. in Supp. at 17-18. Plaintiffs, however, contend the IIED claim is timely because it did not accrue until the criminal charges against Puana were dismissed with prejudice on December 16, 2014. See Mem. in Opp. at 17. The Court concludes that the IIED claim is time-barred.

16

Plaintiffs' IIED claim against Akagi has a two-year statute of limitations.  See Haw. Rev. Stat. § 657-7; see also U.S. E.E.O.C. v. NCL Am., 535 F. Supp. 2d 1149, 1169 (D. Hawai`i 2006) (stating Haw. Rev. Stat. § 657-7 applies to IIED claims (citing Linville v. Hawaii, 874 F. Supp. 1095, 1104 (D. Haw. 1994)).  The IIED claim is governed by the "discovery rule," i.e., a claim accrues when the plaintiff knows or has reason to know of the injury.  See Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 90-91, 648 P.2d 689, 693-94 (1982) (citation omitted) (stating that the discovery rule determines when Hawai`i tort claims begin to accrue).

The parties dispute when Puana knew or had reason to know of Akagi's closing report recommending criminal charges. The statute of limitations accrued, at the latest, when Puana included Akagi's closing report as an exhibit during his federal mailbox theft criminal case, see Akagi's CSOF at ¶ 12; Plaintiffs' Responsive CSOF at ¶ 12, because this inclusion demonstrates that Puana knew of Akagi's recommendation of criminal charges, which is the foundation of the IIED claim against Akagi.  The exhibit list is dated December 1, 2014, see generally Ching Decl., Exh. D (Puana's Amended Exhibit List filed in CR 13-00735 LEK), which suggests that Puana had reason to know of the contents of the closing report on or before December 1, 2014.  As such, the statute of limitations of the

17

IIED claim against Akagi expired, at the latest, on December 1, 2016.  The IIED claim against Akagi is therefore untimely because Plaintiffs filed their original complaint on December 14, 2016.  <u>See</u> Complaint for Damages, filed 12/14/16 (dkt no. 1).

**B.  <u>Merits</u>**

Even if the IIED claim against Akagi was not time-barred, it would fail as a matter of law because Plaintiffs have not provided any evidence that Akagi acted outrageously.

The Hawai`i Supreme Court has stated:

> [T]he tort of IIED consists of four elements: "1) that the act allegedly causing the harm intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." <u>Hac [v. Univ. of Hawai`i]</u>, 102 Hawai`i [102,] 106–07, 73 P.3d [46,] 60–61 [(2003)].  "The term 'outrageous' has been construed to mean without just cause or excuse and beyond all bounds of decency." <u>Enoka v. AIG Hawai`i Ins. Co., Inc.</u>, 109 Hawai`i 537, 559 128 P.3d 850, 872 (2006) (citations and some internal quotation marks omitted).  "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." <u>Takaki v. Allied Machinery Corp.</u>, 87 Hawai`i 57, 68, 951 P.2d 507, 518 (App. 1998) (quotations and quotation marks omitted).

<u>Young v. Allstate Ins. Co.</u>, 119 Hawai`i 403, 429, 198 P.3d 666, 692 (2008) (footnote omitted).

Plaintiffs contend Akagi's conduct was outrageous because his closing report "perpetuated the lies and mishandling

regarding Niall Silva's alleged recovery of the surveillance video of the mailbox theft some five hours before the theft was even reported." [Mem. in Opp. at 16.] Plaintiffs' contention is unpersuasive. Considering the evidence in the light most favorable to Plaintiffs, the Court finds that Akagi was presented with evidence that a reasonable investigator would rely upon:

-that Calistro assigned the investigation to Akagi and Hahn told Akagi that Puana was a person of interest; see Akagi's CSOF at ¶¶ 2-3; Plaintiffs' Responsive CSOF at ¶¶ 2-3;

-that Silva provided Akagi with the video footage of the mailbox theft; see Akagi's CSOF at ¶ 4; Plaintiffs' Responsive CSOF at ¶ 4;

-that Akagi met with Katherine and she identified Puana as the person in the video and Katherine filed an official form identifying Puana, see Akagi's CSOF at ¶¶ 5-7; Plaintiffs' Responsive CSOF at ¶¶ 5-7; and

-that, during the criminal trial against Katherine, Akagi testified that he relied on Katherine's identification in recommending criminal charges, see Ching Decl., Exh. A (Akagi Trans.) at 45, and Akagi stated that "[he] had no reason to not believe her[,]" [id. at 39].

The Court also finds that Akagi did not act outrageously when he sent his closing report to USPS and recommended criminal charges against Puana because he relied on both his supervisor's instruction that Puana was a person of interest and Katherine's identification of Puana. The Court finds that there is no evidence suggesting that Akagi knew or was involved in the fabrication evidence. Importantly, Puana

was already charged with the federal crime before Akagi
submitted his closing report.  Finally, Akagi's reliance and
investigation did not go "beyond all bounds of decency."  <u>See</u>
<u>Young</u>, 119 Hawai`i at 429, 198 P.3d at 692 (quotation marks and
citation omitted).

     C.    **<u>Ruling</u>**

Even viewing the record in the light most favorable to
Plaintiffs, there are no genuine issues of material fact, and
Akagi is entitled to judgment as a matter of law as to
Count III.

**<u>CONCLUSION</u>**

On the basis of the foregoing, the Court GRANTS
Akagi's Motion for Summary Judgment, filed September 28, 2022.
Summary judgment is GRANTED in favor of Akagi as to Counts I,
II, and III.

There being no remaining claims against Akagi, the
Clerk's Office is DIRECTED to terminate him as a party on
**February 8, 2023,** unless a timely motion for reconsideration of
this Order is filed.

IT IS SO ORDERED.

20

DATED AT HONOLULU, HAWAII, January 24, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**GERARD K. PUANA, ET AL. VS. KATHERINE P. KEALOHA, ET AL; CV 16-00659 LEK-WRP; ORDER GRANTING DEFENDANT DRU AKAGI'S MOTION FOR SUMMARY JUDGMENT**