UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| GERARD K. PUANA, RICKY L. HARTSELL, AS TRUSTEE OF THE FLORENCE M. PUANA TRUST,<br><br>         Plaintiffs,<br><br>    vs.<br><br>KATHERINE P. KEALOHA, LOUIS M. KEALOHA, MINH-HUNG NGUYEN, MINH-HUNG "BOBBY" NGUYEN, DANIEL SELLERS, NIALL SILVA, WALTER CALISTRO, DRU AKAGI,  JOHN AND/OR JANE DOES 1-50, DEREK WAYNE HAHN,<br><br>         Defendants. | CIV. NO. 16-00659 LEK-WRP |

**ORDER DENYING DEFENDANT CITY AND COUNTY
OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant City and County of Honolulu's ("the City") Motion for Summary Judgment ("Motion"), filed on September 28, 2022. [Dkt. no. 371.] On November 25, 2022, Plaintiffs Gerard K. Puana ("Puana") and Ricky L. Hartsell as Trustee of the Florence M. Puana Trust (collectively "Plaintiffs") filed their memorandum in opposition. [Dkt. no. 393.] The City filed its reply on December 2, 2022. [Dkt. no. 405.] The Motion came on for hearing on December 16, 2022. [Minutes, filed 12/16/22 (dkt. no. 413).] The Motion is hereby denied for the reasons set forth below.

**BACKGROUND**

The parties are familiar with the facts of the case and, therefore, the Court does not repeat them in detail here. Relevant to the Motion, Plaintiffs allege the City is liable for malicious prosecution under 42 U.S.C. § 1983 for former Chief of Police Louis Kealoha's ("Louis") conduct ("Count I"). [Third Amended Complaint for Damages, filed 5/13/22 (dkt. no. 307), at ¶¶ 185-192.] The Motion seeks summary judgment as to certain elements of Plaintiffs' malicious prosecution claim against the City stemming from Louis's conduct.[1]

**DISCUSSION**

The City only seeks summary judgment as to the City's liability based on Louis's conduct on the grounds that Louis's orders did not constitute Honolulu Police Department's ("HPD") policy and his actions were self-serving. See Motion, Mem. in Supp. at 5, 11. The Court concludes as a matter of law that Louis had final policymaking authority in the area where the alleged constitutional violation occurred. Further, the Court finds that there is a genuine issue of material fact as to

---

[1] On November 17, 2022, the City filed its Notice of Withdrawal Without Prejudice of Sections 3 and 4 of Defendant City and County of Honolulu's Motion for Summary Judgment ("Notice of Withdrawal"). [Dkt. no. 389.] In light of the Notice of Withdrawal, the Court only addresses the portion of Plaintiffs' malicious prosecution claim against the City stemming from Louis's conduct.

2

whether Louis's actions constituted as policies.  The parties did not address or brief the issues as to whether: (1) Louis deprived Puana of his constitutional rights; and (2) such a deprivation was intentional.  The Court, therefore, does not rule on those issues but assumes, for purposes of the instant Motion only, that Louis intentionally deprived Puana of his constitutional rights.

    A.    **Relevant Law**

The United States Supreme Court has relied on four principles when determining whether a single decision may be sufficient to establish an unconstitutional municipal policy:

> First, . . . municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered."  [Pembaur v. City of Cincinnati, 475 U.S. 469,] 480 [(1986)]. Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability.  Id., at 483 (plurality opinion). Third, whether a particular official has "final policymaking authority" is a question of **state law**.  Ibid. (plurality opinion).  Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in **that area** of the city's business.  Id., at 482-483, and n.12 (plurality opinion).

City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (emphases in Praprotnik).  The determination of whether the person who committed the constitutional violation had final

3

policymaking authority must be decided by the court "as a matter of state law and before the case may be submitted to the jury[.]" Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003) (citation omitted).

> The Supreme Court has also stated:
>
> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its **deliberate** conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.
>
> Where a plaintiff claims that a particular municipal action **itself** violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. Section 1983 itself "contains no state-of-mind requirement independent of that necessary to state a violation" of the underlying federal right. Daniels v. Williams, 474 U.S. 327, 330 (1986). In any § 1983 suit, however, the plaintiff must establish the state of mind required to prove the underlying violation. Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

> . . . .
>
> . . . To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation. For example, Owen v. Independence, 445 U.S. 622 (1980), and Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), involved formal decisions of municipal legislative bodies. In Owen, the city council allegedly censured and discharged an employee without a hearing. 445 U.S., at 627–629, 633, and n.13. In Fact Concerts, the city council canceled a license permitting a concert following a dispute over the performance's content. 453 U.S., at 252. Neither decision reflected implementation of a generally applicable rule. But we did not question that each decision, duly promulgated by city lawmakers, could trigger municipal liability if the decision itself were found to be unconstitutional. Because fault and causation were obvious in each case, proof that the municipality's decision was unconstitutional would suffice to establish that the municipality itself was liable for the plaintiff's constitutional injury.
>
> Similarly, Pembaur v. Cincinnati concerned a decision by a county prosecutor, acting as the county's final decisionmaker, 475 U.S., at 485, to direct county deputies to forcibly enter petitioner's place of business to serve *capiases* upon third parties. Relying on Owen and Newport, we concluded that a final decisionmaker's adoption of a course of action "tailored to a particular situation and not intended to control decisions in later situations" may, in some circumstances, give rise to municipal liability under § 1983. 475 U.S., at 481. In Pembaur, it was not disputed that the prosecutor had specifically directed the action resulting in the deprivation of petitioner's rights. The conclusion that the decision was that of a final municipal decisionmaker and was therefore

5

>     properly attributable to the municipality
>     established municipal liability. No questions of
>     fault or causation arose.

Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404–06 (1997) (emphases in Brown).

### B. Whether Louis Possessed Final Policymaking Authority

The Court must first identify the actions Plaintiffs assert were constitutional violations and determine whether Louis was the final policymaker in the area of those alleged violations. The parties admit that Louis "authorized or approved [HPD Criminal Intelligence Unit's ('CIU')] surveillance of [Puana] in an effort to frame [him]." [The City's Separate and Concise Statement of Facts, filed 9/28/22 (dkt. no. 373) ("City's CSOF"), at ¶ 34; Plaintiffs' Reply to Defendant City and County of Honolulu's Concise Statement of Material Facts in Support of Motion for Summary Judgment ("Plaintiffs' Responsive CSOF"), filed 11/25/22 (dkt. no. 394), at ¶ 34 (admitting City's CSOF ¶ 34).] Louis also "diverted law enforcement attention from legitimate police work to serve [Louis]'s personal avarice." [City's CSOF at ¶ 37; Plaintiffs' Responsive CSOF at ¶ 37.] "In 2020, then-HPD Chief of Police Susan Ballard ('Ballard') submitted a declaration relating to [Louis]'s sentencing in a criminal matter." [City's CSOF at ¶ 38; Plaintiffs' Responsive CSOF at ¶ 38.] "Ballard declared to the Court that prolonged surveillance, particularly of non-violent

6

theft offense, diverts resources and significantly disrupts HPD's operations, particularly in District 6 in Waikiki." [City's CSOF at ¶ 39; Plaintiffs' Responsive CSOF at ¶ 39.] "The surveillance of Puana resulted in significant loss of resources to HPD." [City's CSOF at ¶ 42; Plaintiffs' Responsive CSOF at ¶ 42.]

The Court must therefore determine whether Louis's authorization and approval of CIU's surveillance of Puana and diversion of resources to presumably frame Puana in the mailbox theft fell under Louis's final policymaker authority. This Court previously outlined the relevant Hawai`i law and City charter provisions as it relates to the chief of police:

> Under Haw. Rev. Stat. § 52D-3, "[t]he chief of police shall have the powers and duties as prescribed by law, the respective county charter, and as provided by this chapter." Section 6-1601 of the Revised Charter of the City and County of Honolulu 1973 (Amended 2017 Edition) ("City Charter") states "[t]he chief of police shall be the administrative head of the police department." City Charter § 6-1604 governs the powers, duties, and functions of the chief of police. "The chief of police shall . . . detect[] and arrest . . . offenders" and "[t]rain, equip, maintain and supervise the force of police officers." City Charter § 6-1604(a), (b). Although the "chief [of police] shall serve at the pleasure of the police commission," City Charter § 6-1603(1), "neither the [police] commission nor its members shall interfere in any way with the administrative affairs of the department," City Charter § 6-1606(h).

7

Puana v. Kealoha, 587 F. Supp. 3d 1035, 1059 (D. Hawai`i 2022) (alterations in Puana).

Under the City Charter, Louis was solely responsible for the administrative affairs of HPD. See City Charter § 6-1601. This included the authority to "detect[] and arrest . . . offenders." § 6-1604(a). The City appears to argue that, because Puana was not an "offender," given that he was innocent, Louis's actions did not fall under his final policymaking authority and, therefore, the City was not the moving force behind the constitutional violation. See, e.g., Motion, Mem. in Supp. at 11–12. The City's argument is not persuasive. Sometimes law enforcement investigates and arrests the wrong person. If a final policymaker violates a wrongfully arrested person's constitutional rights, it would not make sense that the municipal could escape liability if it turns out that the person is eventually deemed innocent, *i.e.*, they were not technically an "offender" under a strict construction of § 6-1604(a). Presuming that Louis knew from the beginning that Puana did not commit the mailbox theft, the principle still holds true because Louis abused his authority to "detect[] and arrest" Puana – power given to him and him alone by the City Charter. Puana arguably became an "offender" because Louis presumably framed Puana and Puana was eventually arrested and indicted. The fact that Puana was subsequently determined not to be culpable is not

8

material to whether Louis was a final decisionmaker under the single-decision theory of municipal liability. See Brown, 520 U.S. at 405.

Moreover, Louis's authority included the maintenance and supervision of the force of police officers. See City Charter § 6-1604(b). Under this provision of the City Charter and the chief of police's general authority as the administrative head of the force, see § 6-1601, Louis had authority to divert police resources and order the surveillance of Puana. The Police Commission could not interfere with Louis's orders, see § 6-1606(h), though it had the authority to terminate his employment if it determined that Louis's orders were illegal, see § 6-1603(1), (2). In other words, Louis possessed final policymaking authority when it came to the authorization and approval of CIU's surveillance of Puana and the diversion of resources to the mailbox theft investigation.

The decision in Pembaur further supports the ruling that Louis was the final policymaker when he ordered and authorized the surveillance of Puana. There, the Supreme Court held "that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of actions is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur, 475 U.S. at 483-84

9

(citation omitted). In that case, the county prosecutor "made a considered decision based on his understanding of the law and commanded the officers forcibly to enter petitioner's clinic. That decision directly caused the violation of petitioner's [constitutional] rights." Id. at 484. The Supreme Court rejected the argument that the county prosecutor lacked final policymaking authority because, under Ohio law, the county prosecutor could instruct other county officers in matters connected with their official duties. See id. at 484-85. The record established that it was standard procedure for the sheriff to seek the advice from the county prosecutor to determine the best course of action. See id. at 485. Thus, "[i]n ordering the Deputy Sheriffs to enter petitioner's clinic the County Prosecutor was acting as the final decisionmaker for the county, and the county may therefore be held liable under § 1983." Id.

        Here, Louis made the decision to divert HPD resources to surveil Puana. Under Hawai`i law, that decision fell under Louis's authority as the Chief of Police. Put differently, no one could have overridden Louis's order to divert certain HPD resources. As such, Louis possessed final policymaking authority for the actions that lead to the presumed deprivation of Puana's constitutional rights.

10

Finally, the Court must also discuss causation in relation to Plaintiffs' theory. "The 'first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989)). "It is not sufficient for a plaintiff to identify a . . . policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the . . . policy was adhered to with 'deliberate indifference to the constitutional rights of [the plaintiff].'" Id. at 1076 (quoting City of Canton, 489 U.S. at 392, 109 S. Ct. 1197). When a plaintiff alleges that a policy caused the constitutional violation, liability is permitted "on a showing of notice[.]" Id. at 1076 (citing City of Canton, 489 U.S. at 396, 109 S. Ct. 1197). In cases of failure to train, for example, if "'a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of Monell [v. Department of Social Services, 436 U.S. 658 (1978),] are satisfied.'" Id. (emphasis omitted) (quoting City of Canton, 489 U.S. at 396, 109 S. Ct. 1197).

Notice, however, is not required for a single decision theory of § 1983 municipal liability. This is because "proof that a municipality's . . . authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right **necessarily establishes that the municipality acted culpably**." Brown, 520 U.S. at 405 (emphasis added). Indeed, a notice requirement for single decision theories would be superfluous since "the conclusion that the action taken or directed by the . . . authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." See id. As such, the City did not need actual or constructive notice of Louis's conduct because, as the final policymaker in the administrative affairs of HPD, Louis's presumed intentional deprivation of Puana's federal rights is sufficient to establish that the City had the requisite state of mind.

  C. **Whether Louis's Actions Constituted HPD Policies**

The City argues the actions Louis authorized did not comply with HPD policy and he did not follow the procedure to change the policy or adopt a new policy, and therefore his actions did not create final HPD policy. See Motion, Mem. in Supp. at 7. The City cites HPD Policy Number 2.19, which states, in pertinent part: "Department directives are issued by

12

the Chief of Police or on the Chief's authority" and the directives "apply to the entire department." [Motion, Decl. of Counsel, signed by Page C.K. Ogata ("Ogata Decl."), Exh. C (HPD Policy – Organization, Management, and Administration, Policy Number 2.19, dated April 6, 2015 ("Policy Number 2.19")) at PageID.4091.] Policy Number 2.19 also states:

> A.   Policies are issued to establish or revise departmental organization or policy.  A policy remains in effect until rescinded by order of the Chief of Police.
>
> B.   Policies are prepared in final form on white paper and issued by the [Information Technology Division]. . . .

[Id.] The City's argument appears to be that, because Louis did not authorize his orders in final form pursuant to Policy Number 2.19, Louis's actions cannot be policies and therefore his actions are not attributable to the City. The City's argument is unconvincing.

As an initial matter, the Supreme Court has noted that the term "policy" as used in relation to the single decision theory of municipal liability "is consistent with the word's ordinary definition[,]" meaning "'**a specific decision** or set of decisions designed to carry out such a chosen course of action.'" Pembaur, 475 U.S. at 481 n.9 (emphasis added) (quoting Webster's Third New International Dictionary 1754 (1981)). Thus, the Supreme Court has uniformly rejected such a

13

narrow interpretation of the term "policy" as applied to a single decision theory.  Additionally, neither party provides evidence regarding how Louis ordered members of the CIU.  Regardless, although the HPD policies are prepared in final form by following certain procedures, policies can be "rescinded by **order** of the Chief of Police."  See Ogata Decl., Exh. C (Policy Number 2.19) at PageID.4091 (emphasis added).  The City's contention would lead to absurd results.  In effect, the chief of police could issue orders within his or her authority, but if he or she does not implement the orders as "policies" under Policy Number 2.19, then the orders are not "official" or otherwise attributable to the municipality.  Such a rigid view of municipal culpability would incentive issuing orders or policies contrary to any formal procedure because the municipality would be free from liability.  The single decision theory for municipality liability does not support the City's view.

The City also points to the HPD Standards of Conduct to show the extent that Louis's actions deviated from HPD's written policies.  [Motion, Mem. in Supp. at 11.]  For instance, the City relies on the standard of conduct that states:

> The Chief of Police shall:
>
> > 1.   Be responsible for the preservation of public peace, the protection of the rights of person and property, the prevention of

> crime, the detection and arrest of offenders, and the enforcement of all state laws and city ordinances and all rules and regulation made pursuant thereto[.]

[Ogata Decl., Exh. E (HPD Policy - Organization, Management, and Administration, Policy Number 2.21, dated 12/1/16, with attached Standards of Conduct of the Honolulu Police Department) at PageID.4133.] The City also cites Policy Number 7.01, which states in pertinent part: "The detention of an arrestee is permissible only as long as there is probable cause to believe that the person has committed an offense. As soon as circumstances no longer justify such a belief, the person must be released." [Id., Exh. I (HPD Policy – Prisoner and Court-Related Activities, Policy Number 7.01, dated January 1, 2003) at 22.]

The evidence submitted suggests that Louis violated Policy Number 2.21, but there is insufficient evidence in the record to conclude that the release provision in Policy Number 7.01 was violated because the City has provided no evidence to suggest that HPD arrested and detained Puana for the federal mailbox charge.

The question, then, is whether Louis's actions are attributable to the City despite breaking at least one of HPD's policies. Again, Louis's actions are attributable to the City if he was "the individual who had authority in the particular

area where the constitutional violation occurred." See <u>Barone v. City of Springfield</u>, 902 F.3d 1091, 1108 (9th Cir. 2018) (citation omitted). This is true even if those actions violated written policies. That is, if the unconstitutional action falls within Louis's final policymaking authority, it does not matter that the action violated written HPD policy. To hold otherwise would shield unconstitutional acts that fall under the authority of final policymakers as long as municipalities implement written policies stating that a final policymaker cannot commit constitutional violations or otherwise contravene the law. Such a position would make the final policymaker theory of liability meaningless under § 1983. Furthermore, such a position runs counter to Supreme Court precedent stating that "proof that a municipality's . . . authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right **necessarily establishes that the municipality acted culpably**." See <u>Brown</u>, 520 U.S. at 405 (emphasis added).

     The City further argues it cannot be held liable for Louis's actions because his actions served his own personal agenda. <u>See</u> Motion, Mem. in Supp. at 11–13. The City, however, does not cite to any case law stating that the single decision theory requires the action to be made in the municipality's interest or that the action cannot be made in the policymaker's personal interest. Indeed, what matters is if the conduct falls

16

within the final policymaker's authority. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembaur, 475 U.S. at 481–82 (citation omitted). But, here, Louis did not just have discretion to order the CIU to investigate Puana. Rather, Louis's actions were within his final policymaking authority as the Chief of Police, and therefore whether the actions were intended to serve solely his own personal agenda is not material. Even if Louis's agenda was personal, his actions affected the City insofar as it resulted in significant lost resources to HPD. See City's CSOF at ¶ 42; Plaintiffs' Responsive CSOF at ¶ 42.

Even viewing "the evidence in the light most favorable to Plaintiffs as the nonmoving parties," see Harris v. Cnty. of Orange, 17 F.4th 849, 855 (9th Cir. 2021) (brackets, quotation marks, and citation omitted), there is a genuine issue of material fact as to whether Louis's actions constituted as HPD policies and, therefore, the City is not entitled to summary judgment as to that issue.

**CONCLUSION**

On the basis of the foregoing, the Court DENIES the City's Motion for Summary Judgment, filed September 28, 2022.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 25, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**GERARD K. PUANA, ET AL. VS. KATHERINE P. KEALOHA, ET AL; CV 16-00659 LEK-WRP; ORDER DENYING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT**