UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| GERARD K. PUANA, RICKY L. HARTSELL, AS TRUSTEE OF THE FLORENCE M. PUANA TRUST;<br><br>        Plaintiffs,<br><br>    vs.<br><br>KATHERINE P. KEALOHA, LOUIS M. KEALOHA, MINH-HUNG NGUYEN, MINH-HUNG "BOBBY" NGUYEN; DANIEL SELLERS, NIALL SILVA, WALTER CALISTRO, DRU AKAGI,  JOHN AND/OR JANE DOES 1-50, DEREK WAYNE HAHN,<br><br>        Defendants. | CIV. NO. 16-00659 LEK-WRP |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT KATHERINE P. KEALOHA'S MOTION TO
DISMISS THIRD AMENDED COMPLAINT FOR DAMAGES BY JOINDER**

        Before the Court is pro se Defendant Katherine P.
Kealoha's ("Katherine") Motion to Dismiss Third Amended
Complaint for Damages By Joinder ("Motion"), filed on
September 1, 2022.  [Dkt. no. 357.]  On September 28, 2022,
Plaintiffs Gerard K. Puana ("Puana") and Ricky L. Hartsell as
Trustee of the Florence M. Puana Trust ("Hartsell" and
collectively "Plaintiffs") filed their memorandum in opposition
to the Motion ("Plaintiffs' Memorandum in Opposition").  [Dkt.
no. 374.]  On October 20, 2022, Defendant City and County of
Honolulu ("the City") filed its memorandum in opposition to the

Motion ("City Memorandum in Opposition").  [Dkt. no. 384.]  The

Court finds this matter suitable for disposition without a

hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice

for the United States District Court for the District of Hawaii

("Local Rules").  The Motion is hereby granted in part and

denied in part for the reasons set forth below.

## BACKGROUND

Plaintiffs' operative complaint is their Third Amended

Complaint for Damages, filed on May 13, 2022 ("Third Amended

Complaint").  [Dkt. no. 307.]  The parties are familiar with the

facts of the case and, therefore, the Court does not repeat them

in detail here.  Relevant to the Motion, Plaintiffs allege the

following claims against Katherine, in her individual capacity:

a malicious prosecution claim under 42 U.S.C. § 1983

("Count I"); a pattern of racketeering activity claim in

violation of 18 U.S.C. § 1962(c) ("Civil RICO Claim" or

"Count II"); an intentional infliction of emotional distress

claim ("IIED" or "Count III"); and a defamation claim

("Count IV").  See Third Amended Complaint at ¶¶ 185-99.

On May 27, 2022, the City filed its Motion to Dismiss

Third Amended Complaint (ECF No.307) ("City Motion").  [Dkt.

no. 313.]  On June 29, 2022, Defendant Minh-Hung "Bobby" Nguyen

("Nguyen") filed his Motion to Dismiss Third Amended Complaint

for Damages [Doc. 307] ("Nguyen Motion").  [Dkt. no. 330.]  On

September 30, 2022, the Court issued its Order: Granting in Part
and Denying in Part the City's Motion to Dismiss the Third
Amended Complaint; and Denying as Moot Nguyen's Joinder ("9/30
Order").  [Dkt. no. 379.]  On December 19, 2022, the Court
issued its Order Granting Defendant Ming-Hung "Bobby" Nguyen's
Motion to Dismiss Third Amended Complaint for Damages [Doc. 307]
("12/19 Order").[1]  [Dkt. no. 414.]  Katherine seeks dismissal of
the claims alleged against her by joining the City Motion and
the Nguyen Motion.

**DISCUSSION**

I.   **Joinder**

        Local Rule 7.7 states that, "[e]xcept with leave of
court based on good cause, any substantive joinder in a motion
or opposition must be filed and served within three (3) days of
the filing of the motion or opposition joined in."  A
substantive joinder must also be "supported by a memorandum
. . . supplementing the motion or opposition joined in."  Local
Rule LR7.7.  Here, Katherine failed to file her Motion within
three days of the City Motion or the Nguyen Motion.  Katherine
also failed to submit a supporting memorandum with her Motion.
Accordingly, Katherine failed to meet the requirements for a

---

        [1] The 12/19 Order is also available at 2022 WL 17811439.

substantive joinder and, therefore, the Court construes the

Motion as a joinder of simple agreement.

## II.  Merits

Although Katherine was once a licensed attorney, the

Court liberally construes her Motion because she is incarcerated

and proceeding pro se.  See Erickson v. Pardus, 551 U.S. 89, 94

(2007) (per curiam) ("A document filed *pro se* is to be liberally

construed[.] . . ." (citation and internal quotation marks

omitted)).  As such, the Court analyzes the merits of

Plaintiffs' claims against Katherine.

### A.    Malicious Prosecution Claim Under § 1983 (Count I)

"To state a claim under § 1983, a plaintiff must

allege two essential elements: (1) that a right secured by the

Constitution or laws of the United States was violated, and

(2) that the alleged violation was committed by a person acting

under the color of State law."  Benavidez v. Cnty. of San Diego,

993 F.3d 1134, 1144 (9th Cir. 2021) (quotation marks and

citation omitted).

Plaintiffs allege Katherine is liable under § 1983 for

the malicious prosecution of Puana for the theft of her mailbox.

See Third Amended Complaint at ¶ 87.  Plaintiffs fail to state a

plausible § 1983 claim for malicious prosecution against

Katherine, however, because they fail to adequately plead that

Katherine acted under the color of state law.  "The state-action

element in § 1983 'excludes from its reach merely private

conduct, no matter how discriminatory or wrongful.'"  Caviness

v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th

Cir. 2010) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526

U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)).

> Whether a government actor "is acting under color
> of law is not always an easy call, especially
> when the conduct is novel," and "there is no
> rigid formula for measuring state action for
> purposes of section 1983 liability." Gritchen v.
> Collier, 254 F.3d 807, 813 (9th Cir. 2001)
> (quoting McDade v. West, 223 F.3d 1135, 1139 (9th
> Cir. 2000)).  Rather, determining whether a
> public official's conduct constitutes state
> action "is a process of 'sifting facts and
> weighing circumstances.'"  Id. (quoting McDade,
> 223 F.3d at 1139).  "[N]o one fact can function
> as a necessary condition across the board."
> Rawson v. Recovery Innovations, Inc., 975 F.3d
> 742, 751 (9th Cir. 2020) (quoting Brentwood Acad.
> v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S.
> 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807
> (2001)), *cert. denied*, --- U.S. ----, 142 S. Ct.
> 69, 211 L. Ed. 2d 10 (2021).  "At bottom, the
> inquiry is always whether the defendant has
> exercised power possessed by virtue of state law
> **and made possible only because the wrongdoer is**
> **clothed with the authority of state law**."  Id. at
> 748 (internal quotation marks omitted) (quoting
> West, 487 U.S. at 49, 108 S. Ct. 2250).

Garnier v. O'Connor-Ratcliff, 41 F.4th 1158, 1169 (9th Cir.

2022) (alteration in Garnier) (brackets in Garnier) (emphasis

added) (footnote omitted).

Here, Plaintiffs allege Katherine "called 911 . . . to

report that [her] personal mailbox . . . had been taken."

[Third Amended Complaint at ¶ 88.]  They also allege Katherine

"reported to [the Honolulu Police Department ('HPD')] . . . that she could identify . . . Puana from surveillance video as the person taking her mailbox . . . ." [Id. at ¶ 94.[2]]  These allegations provide the extent that Katherine was involved in the alleged scheme to frame Puana with the theft of the mailbox. Plaintiffs do not allege Katherine used her powers and duties as a deputy prosecuting attorney, see id. at ¶ 11, to implement the scheme.[3]  Plaintiffs therefore fail to sufficiently allege Katherine's conduct "is fairly attributable to the government." Garnier, 41 F.4th at 1170 (brackets, quotation marks, and citation omitted).

Accordingly, Plaintiffs' claim in Count I against Katherine is dismissed.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))).  The dismissal is with prejudice because this is Plaintiffs' third

---

[2] "[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true . . . ."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

[3] Although Plaintiffs cite instances when Katherine used her position as a deputy prosecuting attorney that allegedly affected Puana's rights during a criminal prosecution, it was not related to the mailbox theft.  See Third Amended Complaint at ¶¶ 60, 69.

amendment and it is clear that "the pleading [cannot] possibly

be cured by the allegation of other facts."  See Ebner v. Fresh,

Inc., 838 F.3d 958, 963 (9th Cir. 2016) (quotation marks and

citation omitted).

**B.   Civil RICO Claim (Count II)**

Plaintiffs' allegations supporting their Civil RICO

Claim against Katherine are unclear.  It appears, however, that

their Civil RICO Claim stems from Katherine's alleged

involvement in discrediting Puana and ultimately framing him for

the mailbox theft, and her alleged involvement in depriving her

grandmother – Florence M. Puana ("Florence") – of her house and

property.  See Third Amended Complaint at ¶ 194.

**1.   Relevant Law**

"The Racketeer Influenced and Corrupt Organizations

Act (RICO or Act), 18 U.S.C. §§ 1961–1968, provides a private

right of action for treble damages to '[a]ny person injured in

his business or property by reason of a violation' of the Act's

criminal prohibitions."  Bridge v. Phoenix Bond & Indem. Co.,

553 U.S. 639, 641 (2008) (alteration in Bridge) (quoting 18

U.S.C. § 1964(c)).

Under 18 U.S.C. § 1962(c),

[i]t shall be unlawful for any person employed by
or associated with any enterprise engaged in, or
the activities of which affect, interstate or
foreign commerce, to conduct or participate,
directly or indirectly, in the conduct of such

7

enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"Broadly speaking, there are two parts to a civil RICO claim."  Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co., 943 F.3d 1243, 1248 (9th Cir. 2019) ("Painters").  There is "[t]he civil RICO violation . . . defined under 18 U.S.C. § 1962," then there is "'RICO standing' . . . defined under 18 U.S.C. § 1964(c)."  Id.  The former aspect "sets out four elements: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt."  Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)).  The latter aspect – RICO standing – requires that "a plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation."  Painters, 943 F.3d at 1248 (citation and some internal quotation marks omitted).

> To show the existence of an enterprise . . ., plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose.  Boyle v. United States, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009).  Racketeering activity, the fourth element, requires predicate acts . . . .

8

Eclectic Props. E., 751 F.3d at 997.  In explaining predicate

acts, the United Supreme Court has held:

> [P]redicates include any act "indictable" under
> specified federal statutes, §§ 1961(1)(B)-(C),
> (E)-(G), as well as certain crimes "chargeable"
> under state law, § 1961(1)(A), and any offense
> involving bankruptcy or securities fraud or drug-
> related activity that is "punishable" under
> federal law, § 1961(1)(D).  A predicate offense
> implicates RICO when it is part of a "pattern of
> racketeering activity"—a series of related
> predicates that together demonstrate the
> existence or threat of continued criminal
> activity.  H.J. Inc. v. Northwestern Bell
> Telephone Co., 492 U.S. 229, 239 (1989); see
> § 1961(5) (specifying that a "pattern of
> racketeering activity" requires at least two
> predicates committed within 10 years of each
> other).

RJR Nabisco, Inc. v. Eur. Cmty., 579 U.S. 325, 330 (2016).

### 2.    Scheme Related to Florence

Plaintiffs allege that, in January 2009, Katherine

prepared and executed fraudulent trust documents thereby

becoming trustee of a fictitious trust in order to purchase a

condominium under the trust's name.  See Third Amended Complaint

at ¶¶ 25-26.  Katherine allegedly presented the fraudulent

documents to a title company to purchase the condominium with

part of the proceeds from a reverse mortgage she took out on

Florence's house.  See id at ¶¶ 24, 29.  Katherine obtained the

reverse mortgage worth approximately $513,474 on October 6,

2009.  See id. at ¶ 32.  The deed for the newly purchased

condominium was recorded in Katherine's name, as trustee of the

trust, on October 14, 2009.  See id.  Katherine did not pay off

the reverse mortgage, as she had assured Puana she would, and

Florence lost her house.  See id. at ¶¶ 24, 34.

Plaintiffs fail to sufficiently allege "that the

enterprise which [Katherine was] involved in or benefit[ed] from

the racketeering activity [was] one engaged in, or having an

effect on, interstate commerce."  See Musick v. Burke, 913 F.2d

1390, 1398 (1990) (citations omitted).  Plaintiffs do not allege

how Katherine's enterprise was engaged in, or had an effect on,

interstate commerce and, therefore, the portion of the Civil

RICO Claim against Katherine based on the scheme related to

Florence must be dismissed.  The dismissal is with prejudice

because amendment cannot cure the claim's defect.

### 3.    Scheme to Discredit Puana

Plaintiffs allege that, after Puana was arrested for

unlawful entry into a dwelling ("UED") on June 27, 2011,

Katherine unlawfully entered Puana's residence and removed,

among other things, $15,000 in cash.  See id. at ¶¶ 54-56.

Between June 27, 2011 and September 6, 2011, Katherine allegedly

> used her position as a Deputy Prosecuting
> Attorney to have the Sheriff's Division of the
> Department of Public Safety transport . . . Puana
> from jail to state court, on dates when he did
> not have a scheduled court hearing so that
> Katherine . . . could meet with him and convince
> him to enter a residential drug treatment
> program.  This was done covertly and without the

10

knowledge of his defense attorney on the UED
charge.

[Id. at ¶ 60.]  In November 2013, Katherine allegedly directed

personnel at the prosecutor's office to oppose Puana's motion to

dismiss his deferred acceptance of no contest plea and to

persuade the court to convert his deferred acceptance of no

contest plea into a felony conviction in the UED case.  See id.

at ¶ 69.  Plaintiffs further allege that Katherine testified

falsely in depositions and at trial in Puana's state civil case

against Katherine.  See id. at ¶¶ 71, 75, 78-79.  On

February 12, 2015, a jury returned a verdict in favor of

Katherine and she was awarded a total of $658,787.00 in damages

on her counterclaim against Puana.  See id. at ¶ 80.

In June 2013, Katherine called 911 and reported that

her personal mailbox was stolen.  She also identified Puana as

the person who stole the mailbox.  See id. at ¶¶ 88, 94.  Puana

was eventually arrested and charged for destroying a letter box

or mail, based in part on Katherine's false statements.  See id.

at ¶ 104.

Even accepting Plaintiffs' allegations as true, they

do not plausibly allege how Katherine's enterprise was engaged

in, or had an effect on, interstate commerce.  See Musick, 913

F.2d at 1398.  It appears that Katherine's scheme to discredit

Puana was entirely personal.  Although Katherine allegedly used

her professional influence to effectuate this scheme, she did

not work in a position that affected interstate commerce.

Accordingly, the portion of Plaintiffs' Civil RICO Claim against

Katherine based on the scheme to discredit Puana is dismissed.

The dismissal is with prejudice because the claim cannot be

saved by amendment.

C.   **IIED Claim (Count III)**

        Plaintiffs do not allege which specific acts caused

Puana emotional distress.  It appears Plaintiffs group the

defendants' conduct together in alleging their IIED claim.  See,

e.g., Third Amended Complaint at ¶ 183 ("As a direct and

proximate result of the foregoing Plaintiffs have suffered

enormous emotional distress . . . .").

        The Hawai`i Supreme Court has stated:

> [T]he tort of IIED consists of four elements:
> "1) that the act allegedly causing the harm was
> intentional or reckless, 2) that the act was
> outrageous, and 3) that the act caused 4) extreme
> emotional distress to another."  Hac [v. Univ. of
> Hawai`i], 102 Hawai`i [102,] 106-07, 73 P.3d
> [46,] 60-61 [(2003)].  "The term 'outrageous' has
> been construed to mean without just cause or
> excuse and beyond all bounds of decency."  Enoka
> v. AIG Hawai`i Ins. Co., Inc., 109 Hawai`i 537,
> 559 128 P.3d 850, 872 (2006) (citations and some
> internal quotation marks omitted).  "The question
> whether the actions of the alleged tortfeasor are
> unreasonable or outrageous is for the court in
> the first instance, although where reasonable
> people may differ on that question it should be
> left to the jury."  Takaki v. Allied Machinery
> Corp., 87 Hawai`i 57, 68, 951 P.2d 507, 518 (App.
> 1998) (quotations and quotation marks omitted).

12

Young v. Allstate Ins. Co., 119 Hawai`i 403, 429, 198 P.3d 666, 692 (2008) (footnote omitted).  Moreover, Plaintiffs' IIED claim against Katherine has a two-year statute of limitations.  See Haw. Rev. Stat. § 657-7; see also U.S. E.E.O.C. v. NCL Am., 535 F. Supp. 2d 1149, 1169 (D. Hawai`i 2006) (stating Haw. Rev. Stat. § 657-7 applies to IIED claims (citation omitted)).  The IIED claim is governed by the "discovery rule," i.e., a claim accrues when the plaintiff knows or has reason to know of the injury.  See Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 90-91, 648 P.2d 689, 693–94 (1982) (citation omitted) (stating that the discovery rule determines when Hawai`i tort claims begin to accrue).

### 1.    2009 Reverse Mortgage

Plaintiffs do not delineate their IIED claim based on the 2009 reverse mortgage as to Puana and Florence.  Plaintiffs, however, allege the fraudulent trust documents that Katherine gave to the title company to purchase the condominium contained Puana's signature although he did not sign the documents.  See Third Amended Complaint at ¶ 30.  The Court, therefore, addresses this claim as to both Puana and Florence.[4]  To the

---

[4] Haw. Rev. Stat. § 663-7 states:

> A cause of action arising out of a wrongful act, neglect, or default, except a cause of
> (. . . continued)

13

extent that Plaintiffs allege an IIED claim against Katherine

for her conduct related to the reverse mortgage, it is unclear

when Florence or Puana became aware of the injury associated

with the reverse mortgage.  Plaintiffs allege that, on

September 15, 2012, Florence sent a letter to Katherine asking

about the proceeds of the reverse mortgage and whether the

reverse mortgage was being repaid, and Katherine replied on the

same day that she never borrowed money from Florence and she

would seek legal retribution against anyone making such

accusations against her.  See Third Amended Complaint at ¶¶ 67-

68.  Such events suggest Florence had reason to know that there

was a problem with the funds associated with the reverse

mortgage.  But, the fact that Katherine denied borrowing the

money is not conclusive that Florence had reason to know that

Katherine misappropriated the money from the reverse mortgage.

In any event, in March 2013, Florence and Puana sued

Katherine in a civil action claiming, among other things, fraud,

breach of fiduciary duty, and misappropriation of the reverse

---

action for defamation or malicious prosecution,
shall not be extinguished by reason of the death
of the injured person.  The cause of action shall
survive in favor of the legal representative of
the person and any damages recovered shall form
part of the estate of the deceased.

Thus, Hartsell may bring an IIED claim on behalf of
Florence despite her being deceased because he is the trustee of
Florence's estate.

14

mortgage funds.  See id. at ¶ 71.  Thus, Florence and Puana knew

of the injury associated with the reverse mortgage on the date

Plaintiffs commenced the civil action in March 2013, at the

latest.  The statute of limitations for the IIED claim related

to the reverse mortgage, therefore, ran sometime in March 2015.

Because Plaintiffs did not file the original complaint until

December 2016, the IIED claim related to the reverse mortgage is

time-barred.  Plaintiffs' IIED claim against Katherine related

to the reverse mortgage is therefore dismissed.  The dismissal

is with prejudice because the claim's defect cannot be saved by

amendment.

### 2.   2011 UED Charge

To the extent that Plaintiffs allege an IIED claim

related to Puana's 2011 UED charge, it is time-barred.

Katherine allegedly unlawfully entered Puana's residence in June

2011 and removed $15,000 in cash.  See id. at ¶ 56.  Moreover,

from June 2011 to September 2011, Katherine allegedly used her

position as a deputy prosecuting attorney to meet with Puana

without his defense attorney to convince Puana to enter a

residential drug treatment program in order to resolve his UED

charge favorably.  See id. at ¶¶ 60-61.  It appears that Puana

knew of Katherine's conduct related to the UED charge by

September 6, 2011, at the latest.  See, e.g., id. at ¶ 60.  The

statute of limitations for any IIED claim based on Katherine's

15

conduct related to the UED charge ran on September 6, 2013.

Because Plaintiffs did not file their original complaint until

December 2016, any IIED claim related to the UED charge is time-

barred.  As such, Plaintiffs' IIED claim related to the 2011 UED

charge is dismissed.  The dismissal is with prejudice because

amendment cannot cure the claim's defect.

### 3.    2013 Civil Case

To the extent that Plaintiffs allege an IIED claim

related to Katherine's conduct in the 2013 civil case,

Plaintiffs sufficiently plead an IIED claim.  Plaintiffs allege

Katherine lied under oath numerous times, which ultimately led

to Katherine prevailing in her counterclaim.  See id. at ¶¶ 72-

80.  This claim is not time-barred because Plaintiffs did not

find out about the false testimony until 2019.  See id. at ¶ 81.

To the extent that Plaintiffs allege an IIED claim related to

Katherine's conduct in the 2013 civil case, Plaintiffs

sufficiently plead an IIED claim.  Accordingly, Katherine's

Motion is denied as to the portion of Plaintiffs' IIED claim

against Katherine based on her conduct related to the 2013 civil

case.

### 4.    2013 Mailbox Theft

Plaintiffs allege Katherine called 911 on June 22,

2013 to report the theft of her mailbox.  Katherine also

allegedly told police that Puana was the person who stole her

16

mailbox.  Plaintiffs assert Katherine made those statements falsely to implicate Puana in a federal crime in an attempt to discredit him in the ongoing civil case.  See id. at ¶¶ 88–90. Plaintiffs sufficiently allege an IIED claim against Katherine for her conduct related to the 2013 mailbox theft.

Plaintiffs do not allege when Puana became aware of Katherine's conduct related to the 2013 mailbox theft.  During the criminal case associated with the mailbox theft, Puana's public defender issued subpoenas to HPD in September 2014 and October 2014 requesting, among other things, reports and records concerning the 2013 mailbox theft.  See id. at ¶¶ 107-08. Plaintiffs do not allege if or when they received the requested documents, but a motion for a protective order was filed on October 24, 2014 seeking to quash the subpoenas.  See id. at ¶ 109.  The federal theft charge against Puana was dismissed with prejudice via written order on December 16, 2014.  See id. at ¶ 114.  Because it is unclear when Puana became aware of Katherine's involvement in the 2013 mailbox theft, the Court declines to rule on the issue of whether the portion of Plaintiffs' IIED claim against Katherine stemming from those events are time-barred.

D.   **Defamation Claim (Count IV)**

Plaintiffs allege "Katherine . . . made false statements and/or reports about . . . Puana, knowing of the

17

falsity of those statements, and intending thereby to defame and
cause damages . . . ."   [Id. at ¶ 199.]   It appears Plaintiffs
assert a defamation claim against Katherine for the report she
made with HPD identifying Puana as the person who committed the
mailbox theft.   See id. at ¶ 94.[5]

      To plead a defamation claim under Hawai`i law, a
plaintiff must allege:

>    (a)  a false and defamatory statement concerning
>    another;
>
>    (b)  an unprivileged publication to a third
>    party;
>
>    (c)  fault amounting at least to negligence on
>    the part of the publisher [actual malice where
>    the plaintiff is a public figure]; and
>
>    (d)  either actionability of the statement
>    irrespective of special harm or the existence of
>    special harm caused by the publication.

Nakamoto v. Kawauchi, 142 Hawai`i 259, 270, 418 P.3d 600, 611
(2018) (alteration in Nakamoto) (citation omitted).

      Here, Plaintiffs plead a plausible defamation claim
against Katherine because they allege Katherine falsely reported
to HPD that Puana was the person who stole the mailbox.   See
Tuomela v. Waldorf-Astoria Grand Wailea Hotel, Civ. No. 20-00117
JMS-RT, 2021 WL 233695, at *4 (D. Hawai`i Jan. 22, 2021)
("[U]nder Hawaii law, statements that 'impute to a person the

---

[5] Although the Court refers to Plaintiffs as making this
claim, it is clear that only Puana can assert this claim.

commission of a crime' are defamatory per se." (quoting <u>Isaac v.</u>
<u>Daniels</u>, 2018 WL 1903606, at *6 (D. Haw. Mar. 20, 2018))).
Katherine's Motion is therefore denied as to Plaintiffs'
defamation claim against her.

<u>**CONCLUSION**</u>

On the basis of the foregoing, the Court GRANTS IN
PART AND DENIES IN PART Katherine's Motion to Dismiss Third
Amended Complaint for Damages By Joinder, filed September 1,
2022.  The Motion is GRANTED to the extent that: Plaintiffs'
claim against Katherine in Count I is DISMISSED; Plaintiffs'
claim against Kathrine in Count II is DISMISSED; and the portion
of Count III against Katherine based on her conduct relating to
the 2009 reverse mortgage and the 2011 UED charge is DISMISSED.
The dismissals are WITH PREJUDICE.

The Motion is DENIED to the extent that: the portion
of Count III against Katherine based on her conduct related to
the 2013 civil case and the 2013 mailbox theft survives
dismissal; and Count IV survives dismissal.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 31, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

GERARD K. PUANA, ET AL. VS. KATHERINE P. KEALOHA, ET AL; CV 16-
00659 LEK-WRP; ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT KATHERINE P. KEALOHA'S MOTION TO DISMISS THIRD AMENDED
COMPLAINT FOR DAMAGES BY JOINDER

20