IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GERARD K. PUANA, RICKY L. HARTSELL, AS TRUSTEE OF THE FLORENCE M. PUANA TRUST; <br><br> Plaintiffs, <br><br> vs. <br><br> KATHERINE P. KEALOHA, LOUIS M. KEALOHA, MINH-HUNG NGUYEN, MINHHUNG "BOBBY" NGUYEN; DANIEL SELLERS, NIALL SILVA, WALTER CALISTRO, DRU AKAGI, JOHN AND/OR JANE DOES 1-50, DEREK WAYNE HAHN, <br><br> Defendants. | CIVIL NO. 16-00659 LEK-WRP <br><br> FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST LOUIS M. KEALOHA |

FINDINGS AND RECOMMENDATION TO GRANT
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AGAINST LOUIS M. KEALOHA

Before the Court is Plaintiffs Gerard K. Puana (Puana) and Ricky L.

Hartsell as Trustee of the Florence M. Puana Trust's (collectively, Plaintiffs)

Motion for Default Judgment as to Defendant Louis M. Kealoha (Motion). See

Plfs' Mot., ECF No. 460. Defendants City and County of Honolulu and Minh-

Hung "Bobby" Nguyen filed Statements of No Position regarding the Motion. See

Defendant City and County's Statement of No Position, ECF No. 465; Defendant

Minh-Hung "Bobby" Nguyen's Statement of No Position, ECF No. 466.

Defendant Louis Kealoha (Chief Kealoha) submitted various letters to the Court

asking for an extension of time to hire an attorney, informing the Court that he was

unable to find counsel, and requesting the appointment of counsel.  <u>See</u> Chief

Kealoha Letters, ECF Nos. 469 and 471.  The Court granted an extension of time,

denied his request for appointment of counsel, and construed his letter received on

May 22, 2023 as an opposition to the Motion.  <u>See</u> Minute Orders, ECF Nos. 470

and 472.  The Court also requested supplemental briefing from Plaintiffs, who

complied by filing a Supplemental Memorandum in Support of Motion on July 12,

2023.  <u>See</u> Minute Order, ECF No. 473; Plfs' Supp. Memo., ECF No. 474.  The

Court finds this Motion suitable for disposition without a hearing pursuant to Rule

7.1(c) of the Local Rules of Practice of the United States District Court for the

District of Hawai'i.  After careful consideration of the record in this action and the

relevant legal authority, the Court FINDS AND RECOMMENDS that Plaintiffs'

Motion be GRANTED.[1]

---

[1] Within fourteen days after a party is served with the Findings and Recommendation,
pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States
District Court.  A party must file any objections within the fourteen-day period to preserve
appellate review of the Findings and Recommendation.

## FACTUAL BACKGROUND

As noted in prior orders entered in this case, the parties are familiar with the facts of this case and, therefore, the Court does not repeat them in detail here but recounts the factual allegations relevant to the present Motion.

Plaintiffs' operative complaint is the Third Amended Complaint for Damages, filed on May 13, 2022 (Third Amended Complaint or TAC).  Relevant to this Motion, Plaintiffs assert the following claims against Chief Kealoha in his individual capacity: a malicious prosecution claim under 42 U.S.C. § 1983, a claim for intentional infliction of emotional distress (IIED), and a defamation claim.  See Plfs' Supp. Memo., ECF No. 474 at 3-10; TAC, ECF No. 307 ¶¶ 193-199.  As noted in Plaintiffs' Motion, each of these claims arise from Chief Kealoha's conduct surrounding a staged mailbox theft, falsely identifying Puana as the thief, directing subordinate police officers to falsify evidence and police reports, and falsely testifying under oath at Puana's criminal trial.

According to the Third Amended Complaint, Chief Kealoha was the chief of police of the Honolulu Police Department (HPD).  See id. ¶ 13.  While the chief of police, Chief Kealoha staged the theft of the Kealohas' mailbox and falsely identified Puana as the thief in a "campaign to attack, discredit, and falsely implicate Gerard K. Puana in criminal activity" for the purpose of "discrediting him in the pending civil litigation over the proceeds of the reverse mortgage on

3

Florence Puana's residence." See id. ¶¶ 87, 90, 93. During the investigation of the mailbox theft, Plaintiffs allege that Chief Kealoha "repeatedly lied to and/or made deliberate misrepresentations to the HPD officers assigned to the case" and directed Criminal Intelligence Unit (CIU) police officers to "make false statements, fabricate evidence, and falsify reports to implicate Gerard K. Puana in the theft of their mailbox." See id. ¶¶ 40, 89-90. The TAC states that several police officers complied with Chief Kealoha's instructions by mishandling evidence, fabricating evidence, falsifying reports, and failing to perform investigative and police duties in order to "ensure Gerard K. Puana would be prosecuted for the alleged theft of the Kealohas' mailbox." See id. ¶¶ 89, 97. Chief Kealoha also ordered CIU police officers to surveil Puana twenty-four hours a day, and the surveillance was carried out using twelve officers working twelve-hour shifts in teams of six. See id. ¶ 52.

As a result of Chief Kealoha's actions, Puana was arrested on July 1, 2013 and indicted for the mailbox theft in federal court on July 11, 2023. See id. ¶ 104. The TAC further alleges that, at Puana's criminal trial, Chief Kealoha knowingly and deliberately gave false testimony when he identified Puana as the person who stole his mailbox. See id. ¶ 112. Further, according to the TAC, Chief Kealoha deliberately caused a mistrial to "conceal the ongoing conspiracy to falsely implicate Gerard K. Puana." See id. ¶ 113. Ultimately, the theft case against Puana was dismissed with prejudice on December 16, 2014 at the request

4

of the United States Attorney's office.  See id. ¶ 114.

## PROCEDURAL BACKGROUND

Plaintiffs commenced this action on December 14, 2016.  See Complaint, ECF No. 1.  At the time he was served with the Complaint, Chief Kealoha was represented by counsel, who filed an answer to the Complaint.  See Answer, ECF No. 32.  Chief Kealoha's counsel withdrew on October 7, 2019, and Chief Kealoha has been proceeding pro se since that time.  See Order Granting Motion to Withdraw, ECF No. 59.  Plaintiffs subsequently filed three amended complaints, culminating with the Third Amended Complaint filed on May 13, 2022.  See TAC, ECF No. 307.  Chief Kealoha did not answer or respond to the Second Amended Complaint or the Third Amended Complaint.  As a result, default was entered against Chief Kealoha on February 10, 2023.  See Entry of Default, ECF No. 455.

After extensive motions practice and numerous settlement discussions, all claims in the case were resolved except for those against Chief Kealoha in his individual capacity.  See, e.g., Stipulation for Partial Dismissal of Plaintiffs' Claims With Prejudice, ECF No. 468 ("This Stipulation for Partial Dismissal does not affect Plaintiffs' remaining claims against Defendant LOUIS M. KEALOHA in his individual capacity in the above-entitled action.").  Plaintiffs now move this Court for entry of default judgment on the remaining claims against

5

Chief Kealoha in his individual capacity.

## DISCUSSION

Default judgment may be entered if the defendant has defaulted by failing to appear.  See Fed. R. Civ. P. 55(b).  The grant or denial of a motion for default judgment is within the discretion of the court.  Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986).  Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible.  Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court should consider the following factors in deciding whether to grant a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff;
> (2) the merits of plaintiff's substantive claim;
> (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect; and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471-72 (citation omitted).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to

which he is entitled.  Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir.

2002).  Also, "necessary facts not contained in the pleadings, and claims which are

legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N.

Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d

1386, 1388 (9th Cir. 1978)).

### A. Jurisdiction

Before considering the merits of default judgment, the Court has an

affirmative obligation to determine whether or not it has subject matter jurisdiction

over this action and personal jurisdiction over Chief Kealoha.  See In re Tuli, 172

F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later

be successfully attacked as void, a court should determine whether it has the

power, i.e., the jurisdiction, to enter the judgment in the first place.").

First, this Court has subject matter jurisdiction over Plaintiffs'

section 1983 claim for violation of their constitutional rights.  See Cortez v. Skol,

776 F.3d 1046, 1054 (9th Cir. 2015) ("The district court had federal question

jurisdiction over the § 1983 claim[.]"); 28 U.S.C. § 1131 ("The district courts shall

have original jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States."); TAC ¶¶ 185-92, ECF No. 307 at 45-47.  The Court

has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C.

Section 1367(a).

Second, the Court also has personal jurisdiction over Chief Kealoha because he was properly served in accordance with the Federal Rules of Civil Procedure (FRCP).  See Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1135 (9th Cir. 2009) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with [FRCP] 4."); see also Proof of Service, ECF No. 24; Seitz Decl'n, ECF No. 460-1 ¶¶ 3, 8-10.

**B. Eitel Factors**

Following a determination that jurisdiction is proper, the Court must consider whether default judgment is appropriate under the Eitel factors outlined above.

**1. The Possibility of Prejudice to Plaintiffs**

The first factor considers whether Plaintiffs would suffer prejudice if default judgment is not entered.  See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Chief Kealoha has not defended against Plaintiffs' claims since his counsel in this case withdrew on October 7, 2019.  See Order Granting Motion to Withdraw, ECF No. 59.  After his counsel withdrew, Plaintiffs filed three amended complaints including the Third Amended Complaint, which Chief Kealoha failed to answer.  Additionally, claims against the other Defendants in this case have been resolved, and the claims against Chief Kealoha in his individual capacity are the only claims remaining in this case.  Absent entry

8

of default judgment against Chief Kealoha in his individual capacity, Plaintiffs

would be without recourse for recovery against him.  Therefore, the first Eitel

factor favors default judgment.

### 2. Merits of Plaintiffs' Substantive Claims

As noted above, for purposes of liability, the factual allegations in the

complaint are taken as true on default.  See TeleVideo Sys., Inc., 826 F.2d at 917-

18; Fair Hous. of Marin, 285 F.3d at 906.  In their Supplemental Memorandum,

Plaintiffs clarify that they seek default judgment against Chief Kealoha in his

individual capacity on their claims for malicious prosecution under 42 U.S.C.

§ 1983, IIED, and defamation.  See Plfs' Supp. Memo., ECF No. 474 at 3-10.

Each claim is addressed in turn.

### a.  Malicious Prosecution

Plaintiffs assert that the TAC sufficiently pleads a Fourth

Amendment malicious prosecution claim under 42. U.S.C. § 1983.  See Plfs'

Supp. Memo., ECF No. 747 at 3-8.

Section 1983 "creates a cause of action for 'the deprivation of any

right, privilege, or immunity secured by the Constitution' by individuals acting

'under color of' law."  See Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1144

(9th Cir. 2021) (citing 42 U.S.C. § 1983) (brackets omitted).  "To state a claim

under § 1983, a plaintiff must allege two essential elements: (1) that a right secured

by the Constitution or laws of the United States was violated, and (2) that the

alleged violation was committed by a person acting under the color of State law."

Id. (quoting Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006)).

       In order to prevail on a section 1983 claim of malicious prosecution,

a plaintiff must show "that the defendants prosecuted [him] with malice and

without probable cause, and that they did so for the purpose of denying [him]

equal protection or another specific constitutional right."  See Lacey v. Maricopa

Cnty., 693 F.3d 896, 919 (9th Cir. 2012) (citations omitted).  Such a claim

"requires 'the institution of criminal proceedings against another who is not guilty

of the offense charged' and that 'the proceedings have terminated in favor of the

accused.'"  See id. (citing Restatement (Second) of Torts § 653 (1977)).

       Additionally, this Court "must look to Hawaii law 'to determine the

legal effect of the [federal criminal] court's action because the Ninth Circuit has

incorporated the relevant elements of the common law tort of malicious

prosecution into the analysis under § 1983."  See Andrews v. Hawaii Cnty., No.

CIV. 11-00512 JMS, 2013 WL 5276533, at *9 (D. Haw. Sept. 18, 2013) (brackets

omitted) (citing Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir.

2004)).  Under Hawaiʻi law, a grand jury functions "to determine whether

probable cause exists," and there is a "presumption that the grand jury acted upon

sufficient and legal evidence."  See McCarthy v. Mayo, 827 F.2d 1310, 1317 (9th

10

Cir. 1987) (citing State v. Jenkins, 1 Haw. App. 430, 620 P.2d 263, 267 (1980));

State v. Apao, 59 Haw. 625, 637-38, 586 P.2d 250 (1978) (burden is on the

defendant to present evidence that the grand jury deliberations were so infected as

to invalidate the indictment)).

    The factual allegations in the Third Amended Complaint, taken as

true, are sufficient to establish Plaintiffs' claim for malicious prosecution.   In the

TAC, Plaintiffs allege that Chief Kealoha staged the theft of the Kealohas' mailbox

and falsely identified Puana as the thief in a "campaign to attack, discredit, and

falsely implicate Gerard K. Puana in criminal activity by staging the theft."  See

TAC, ECF No. 307 ¶¶ 87, 93.  During the investigation of the mailbox theft,

Plaintiffs allege that Chief Kealoha "repeatedly lied to and/or made deliberate

misrepresentations to the HPD officers assigned to the case" and directed police

officers to "make false statements, fabricate evidence, and falsify reports to

implicate Gerard K. Puana in the theft of their mailbox for the purpose of

discrediting him in the pending civil litigation over the proceeds of the reverse

mortgage on Florence Puana's residence."  See id. ¶¶ 89-90.  The TAC states that

several officers complied with Chief Kealoha's instructions by mishandling

evidence, fabricating evidence, falsifying reports, and failing to perform

investigative and police duties in order to "ensure Gerard K. Puana would be

prosecuted for the alleged theft of the Kealohas' mailbox."  See id. ¶ 97.  As a

result of Chief Kealoha's actions, Puana was arrested on July 1, 2013 and indicted for the mailbox theft in federal court on July 11, 2023. See id. ¶ 104. The TAC further alleges that, at Puana's criminal trial, Chief Kealoha knowingly and deliberately gave false testimony when he identified Puana as the person who stole his mailbox. See id. ¶ 112. Further, according to the TAC, Chief Kealoha deliberately caused a mistrial to "conceal the ongoing conspiracy to falsely implicate Gerard K. Puana." See id. ¶ 113. Ultimately, the theft case against Puana was dismissed with prejudice on December 16, 2014 at the request of the United States Attorney's office. See id. ¶ 114.

In light of the allegations in the TAC that Chief Kealoha staged the theft of the Kealohas' mailbox, falsely identified Puana as the thief, repeatedly lied and made misrepresentations during the investigation, and ordered police officers to fabricate evidence and falsify reports, Plaintiffs have sufficiently rebutted the "presumption that the grand jury acted upon sufficient and legal evidence." See McCarthy, 827 F.2d at 1317. Accordingly, these allegations sufficiently establish a malicious prosecution claim against Chief Kealoha under 42 U.S.C. § 1983 in violation of Puana's Fourth Amendment rights. See Lacey, 693 F.3d at 919.

### b. Intentional Infliction of Emotional Distress

The tort of IIED consists of four elements: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and

12

3) that the act caused 4) extreme emotional distress to another." See Young v. Allstate Ins. Co., 119 Haw. 403, 429, 198 P.3d 666, 692 (2008). "The term 'outrageous' has been construed to mean without just cause or excuse and beyond all bounds of decency." Id. (citing Enoka v. AIG Hawai'i Ins. Co., Inc., 109 Hawai'i 537, 559 128 P.3d 850, 872 (2006)). An "outrageous" act is one "'without just cause or excuse and beyond all bounds of decency' such that upon hearing the facts of a case average members of our community might indeed exclaim, 'Outrageous.'" See You v. Longs Drugs Stores California, LLC, 937 F. Supp. 2d 1237, 1260 (D. Haw. 2013) (quoting Young, 119 Haw. at 429-30, 198 P.3d at 692-93). An IIED claim "requires conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." See id. at 1259 (citing Hac v. Univ. of Haw., 102 Hawai'i 92, 106, 73 P.3d 46, 60 (2003)).

Plaintiffs assert that the claim of IIED is sufficiently pled insofar as the TAC alleges that Chief Kealoha ordered Puana to be surveilled, falsely identified Puana as the person who stole his mailbox, and directed the fabrication and mishandling of evidence by other police officers, which resulted in Puana's arrest and prosecution in federal court. See Plfs' Supp. Memo., ECF No. 474 at 8-9. Plaintiffs also assert that Chief Kealoha's conduct caused Puana to suffer severe emotional distress. See id. at 11.

13

The TAC alleges that Chief Kealoha ordered CIU police officers to surveil Puana twenty-four hours a day and that the surveillance was carried out using twelve officers working twelve-hour shifts in teams of six.  See TAC, ECF No. 307 ¶ 52.  Plaintiffs also allege that Chief Kealoha staged the theft of the Kealohas' mailbox and falsely identified Puana as the thief in a "campaign to attack, discredit, and falsely implicate Gerard K. Puana in criminal activity by staging the theft." See id. ¶¶ 87, 93.  Plaintiffs further allege that Chief Kealoha "repeatedly lied to and/or made deliberate misrepresentations to the HPD officers assigned to the case" and directed police officers to "make false statements, fabricate evidence, and falsify reports to implicate Gerard K. Puana in the theft of their mailbox for the purpose of discrediting him in the pending civil litigation over the proceeds of the reverse mortgage on Florence Puana's residence." See id. ¶¶ 89-90.  The TAC states that several officers complied with Chief Kealoha's instructions by mishandling evidence, fabricating evidence, falsifying reports, and failing to perform investigative and police duties in order to "ensure Gerard K. Puana would be prosecuted for the alleged theft of the Kealohas' mailbox." See id. ¶ 97.  As a result of Chief Kealoha's actions, Puana was arrested and indicted for the mailbox theft. See id. ¶ 104.  Plaintiffs also allege that, as a direct result of Chief Kealoha's actions, they suffered "enormous emotional distress, worry, and anxiety." See id. ¶ 183.  Based on the allegations made in the TAC, the Court

finds that Plaintiffs' factual allegations, taken as true, are sufficient to establish

Plaintiffs' claim for IIED.  See Young, 119 Haw. at 429, 198 P.3d at 692.

### c.  Defamation

To plead a defamation claim under Hawaiʻi law, a plaintiff must

allege:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of
the publisher [actual malice where the plaintiff is a
public figure]; and

(d) either actionability of the statement irrespective of
special harm or the existence of special harm caused
by the publication.

Nakamoto v. Kawauchi, 142 Hawaiʻi 259, 270, 418 P.3d 600, 611 (2018) (quoting

Beamer v. Nishiki, 66 Haw. 572, 578–79, 670 P.2d 1264, 1271 (1983)).

"'Publication' for a defamation claim means a communication to some third party

other than the person defamed."  Mahoe v. Operating Engineers Loc. Union No. 3

of the Int'l Union of Operating Engineers, AFL-CIO, No. CIV. 13-00186 HG-

BMK, 2013 WL 5447261, at *8 (D. Haw. Sept. 27, 2013) (citing Vlasaty v. Pacific

Club, 670 P.2d 827, 560 (Haw. App. 1983)).  Further, "under Hawaii law,

statements that 'impute to a person the commission of a crime' are defamatory per

se."  Tuomela v. Waldorf-Astoria Grand Wailea Hotel, No. CV 20-00117 JMS-RT,

2021 WL 233695, at *4 (D. Haw. Jan. 22, 2021) (citations omitted).

        In the Third Amended Complaint, Plaintiffs allege that Chief Kealoha falsely identified Puana as the individual who stole his mailbox.  See TAC, ECF No. 307 ¶ 93 ("On or about June 24, 2013, Chief Kealoha falsely identified Gerard K. Puana as the person who stole the mailbox from in front of his Kahala residence.").  Plaintiffs also allege that Chief Kealoha falsely testified at a federal criminal trial that Puana stole his mailbox.  See id. ¶ 112 ("On December 14, 2014, Chief Kealoha testified at Gerard K. Puana's federal criminal trial for theft of the mailbox and knowingly and deliberately gave false and perjured testimony when he identified Gerard K. Puana as the person who stole his mailbox.").  According to the TAC, Chief Kealoha published the defamatory statements by directing police officers to make false statements, fabricate evidence, and falsify reports to implicate Puana in the theft of his mailbox, and by testifying at the federal criminal trial.  See id. ¶ 90 ("Chief Kealoha directed CIU officers, including Hahn, Nguyen, and Sellers, to make false statements, fabricate evidence, and falsify reports to implicate Gerard K. Puana in the theft of their mailbox for the purpose of discrediting him in the pending civil litigation over the proceeds of the reverse mortgage on Florence Puana's residence."); ¶ 112.  The TAC adequately pleads that Chief Kealoha knowingly made the false statements and, because the statements falsely identified Puana as committing the mailbox theft, the statements

16

constitute defamation per se.  See Tuomela, 2021 WL 233695, at *4; TAC ¶ 112

("Chief Kealoha . . . knowingly and deliberately gave false and perjured testimony

when he identified Gerard K. Puana as the person who stole his mailbox.").  Based

on the allegations made in the TAC, the Court finds that Plaintiffs' factual

allegations, taken as true, are sufficient to establish Plaintiffs' claim for

defamation.

In sum, this factor (merits of Plaintiffs' substantive claims) weighs in

favor of default judgment as to Plaintiffs' claims for malicious prosecution, IIED,

and defamation against Chief Kealoha.

### 3. Sufficiency of the Complaint

As discussed above, the allegations in the TAC are sufficiently pled

for the malicious prosecution, IIED, and defamation claims against Chief Kealoha

in his individual capacity.  Therefore, this factor weighs in favor of default

judgment as to each of these claims.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to

the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1176.

Here, Plaintiffs seek to recover $250,000 in general damages and $250,000 in

punitive damages from Chief Kealoha.  See Seitz Decl'n, ECF No. 460-1 ¶ 16.

Plaintiffs contend that such damages are based on various psychological disorders

Puana developed as a result of his false arrest and malicious prosecution.  See Plfs'

Supp. Memo, ECF No. 474 at 11.  As discussed below, the Court finds that

Plaintiffs are entitled to general damages and punitive damages in these amounts

based on Chief Kealoha's conduct.  Insofar as the sum of money at stake is not too

large or unreasonable in relation to Chief Kealoha's conduct, the Court finds that

this factor weighs in favor of default judgment.  Langer v. Euclid Ave., LLC, No.

19-CV-2384 DMS (DDL), 2022 WL 3588320, at *4 (S.D. Cal. Aug. 22, 2022)

("Courts disfavor default judgment when 'the sum of money at stake is too large or

unreasonable in relation to the defendant's conduct.'").

### 5. Possibility of Dispute Concerning Material Facts

As noted above, the well-pled factual allegations of the Complaint,

except those relating to the amount of damages, will be taken as true.  See

TeleVideo Sys., Inc., 826 F.2d at 917-18.  Chief Kealoha has been given a fair

opportunity to defend this action and has not done so since his attorney withdrew

on October 7, 2019.  See Order Granting Motion to Withdraw, ECF No. 59.  Chief

Kealoha did not respond to the Second Amended Complaint or Third Amended

Complaint and has not challenged Plaintiffs' material factual allegations.

Therefore, the Court finds that this factor favors default judgment.

### 6. Whether Default Was Due to Excusable Neglect

"The sixth Eitel factor considers whether defendant's default may

have been the product of excusable neglect." <u>Ho v. Tan Trinh</u>, No. 8:16-CV-481-JLS-JCGX, 2016 WL 11520810, at *5 (C.D. Cal. Oct. 27, 2016). "This factor favors a default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." <u>Id.</u>

As noted above, Chief Kealoha was served with each complaint in this case and participated in the litigation prior to the withdrawal of his counsel. After his counsel withdrew, Chief Kealoha minimally participated in this litigation but did not respond to the Second Amended Complaint or Third Amended Complaint. The Court therefore finds that this factor favors entry of default judgment.

### 7. Policy Favoring Decisions on the Merits

Chief Kealoha's default renders a decision on the merits impractical, if not impossible. Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." <u>PepsiCo., Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh <u>Eitel</u> factor is not alone dispositive"). Here, Chief Kealoha has failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable. This factor does not preclude the Court from entering default judgment against Chief Kealoha.

### 8. Totality of <u>Eitel</u> Factors

The Court finds that the totality of the factors discussed above weighs in favor of granting entry of default judgment against Chief Kealoha in his individual capacity for the malicious prosecution, IIED and defamation claims asserted in the Third Amended Complaint.

### C. Remedies

Although a defendant's default establishes liability, it does not establish all relief to which a plaintiff is entitled. A plaintiff must provide evidence to support its requested relief and that relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). As noted above, the rule that the factual allegations of the complaint are taken as true does not apply to the amount of damages. <u>See</u> <u>TeleVideo Sys, Inc.</u>, 826 F.2d at 917-18. "To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit." <u>Concord Transportation, Inc. v. Houser Logistics, Inc.</u>, Case No. CV 19-7453 FMO (Ex), 2020 WL 2046169, at *5 (C.D. Cal. Jan. 3, 2020) (citation omitted). "Courts apply the preponderance of the evidence standard to a plaintiff's damages case on default judgment." <u>Id.</u>

Rule 55 provides that the court may conduct a hearing to effectuate judgment when it needs to determine the amount of damages. <u>See</u> Fed. R. Civ. P.

20

55(b)(2).  However, if damages are capable of being determined from figures in documentary evidence or detailed affidavits, default judgment may be entered without a hearing.  See United States v. Yermian, 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment.").

In their Motion for Default Judgment, Plaintiffs seek $250,000 in general damages and $250,000 in punitive damages from Chief Kealoha for his conduct underlying the malicious prosecution, IIED and defamation claims.  See Seitz Decl'n, ECF No. 460-1 ¶ 16.  Each category of damages is discussed below.

**1. General Damages**

General damages are "[d]amages that the law presumes follow from the type of wrong complained of."  See Black's Law Dictionary (11th ed. 2019). General damages "provide compensation for pain, suffering and emotional distress."  See In re Hawaii Fed. Asbestos Cases, 734 F. Supp. 1563, 1567 (D. Haw. 1990).  Plaintiffs may recover general damages for a successful malicious prosecution claim under section 1983.  See Smith v. City of Oakland, 538 F. Supp. 2d 1217, 1235 (N.D. Cal. 2008) (citing Heck v. Humphrey, 512 U.S. 477,  484, (1994)) ("a successful malicious prosecution plaintiff may recover . . . general damages").  Additionally, under Hawaiʻi law, plaintiffs may recover

21

general damages for the torts of IIED and defamation.  See Taylor v. Franko, No.

CIV. 09-00002 JMS, 2011 WL 2746714, at *5 (D. Haw. July 12, 2011) (finding

the plaintiff was entitled to general damages for IIED and defamation claims).

       In support of Plaintiffs' request for general damages in this case,

Plaintiffs rely on the Report and Independent Psychological Examination of Gerard

K. Puana by Marvin Acklin, Ph.D., dated September 9, 2022 (Report).  See Plfs'

Supp. Memo, ECF No. 474 at 10; Exhibit 3 to Motion (filed under seal), ECF

No. 464.  The Report details the various disorders that Puana suffers from,

including: post-traumatic stress disorder, adjustment disorder with anxiety and

depression, major depressive disorder, and generalized anxiety disorder.  See Plfs'

Supp. Memo, ECF No. 474 at 10-11; Exhibit 3 to Motion (filed under seal), ECF

No. 464 at 21-22.  Dr. Marvin Acklin opined that these psychological disorders

and symptoms were "proximately related to the circumstances of the legal cases

where [Puana] was falsely arrested, jailed, and prosecuted" and that other sources

of distress were "ruled out."  See Plfs' Supp. Memo, ECF No. 474 at 11; Exhibit 3

to Motion (filed under seal), ECF No. 464 at 22.  Based on Dr. Acklin's opinions

after conducting an independent psychological evaluation of Puana, the Court finds

that Puana's psychological disorders and symptoms were caused by Chief

Kealoha's actions underlying the malicious prosecution, IIED and defamation

claims based on the federal charges related to the mailbox theft.

22

In determining the appropriate amount of general damages, the Ninth

Circuit has cautioned that, "[w]hile analogies to, and comparisons with, other cases

may be helpful on many types of issues, their usefulness on questions of damages

is extremely limited." Mattschei v. United States, 600 F.2d 205, 209 (9th Cir.

1979).  Additionally, the Court notes the wide range of awards granted in other

actions for malicious prosecution.  See, e.g., Rodriguez v. Los Angeles Police

Dep't, 2:16CV02048, 2017 WL 2417146 (C.D. Cal. Mar. 9, 2017) (jury award for

$254,286 in general damages and $180,714 in punitive damages for unlawful

search and seizure, wrongful arrest, malicious prosecution, and IIED claims);

Bedetti v. City of Long Beach, 2:14CV09102, 2017 WL 2634932 (C.D. Cal.

May 8, 2017) (jury award for $3 million for malicious prosecution, excessive force

and First Amendment claims where police officers allegedly falsified police

reports and provided false testimony during criminal prosecution); Cole v. Cty. of

Los Angeles, 10CV07344(PSG), 2012 WL 8415779 (C.D. Cal. Jan. 19, 2012)

(jury award of $99,700 for damages related to malicious prosecution, IIED, and

false arrest claims); Wiederspohn v. Freeman, Civ. No. 2:07-cv-02074, 2009 WL

2013595 (W.D. Wash. Jan. 30, 2009) (jury award for $200,000 in general damages

and $300,000 in punitive damages for false arrest and malicious prosecution

claims); Cazares v. City of Bell Gardens, No. 2:06-cv-05985-VBF-JTL, 2008 WL

1901847 (C.D. Cal. April 14, 2008) (jury award for $4,458,644 for malicious

23

prosecution, excessive force and false arrest claims where police officers were accused of falsifying police reports and lying under oath). Based on Puana's psychological disorders and symptoms caused by Chief Kealoha's conduct underlying the claims in this case, the Court finds that Plaintiffs have established by a preponderance of the evidence that they are entitled to $250,000 in general damages from Chief Kealoha in his individual capacity for his conduct underlying the malicious prosecution, IIED and defamation claims in this case. See Concord Transportation, Inc., 2020 WL 2046169, at *5 (preponderance of the evidence standard applies to damages award on default judgment).

## 2. Punitive Damages

Plaintiffs also seek punitive damages in the amount of $250,000 for the malicious prosecution claim under section 1983. See Plfs' Supp. Memo.; ECF No. 474 at 11-12. Plaintiffs contend that Chief Kealoha "abused his position as a police officer, abused his position as Chief of Police, and abused manpower and resources of the City and County of Honolulu to maliciously fabricate and prosecute Gerard Puana for a crime he did not commit." See id. at 12. Plaintiffs also assert that Chief Kealoha's conduct was intended to "intimidate and discredit Gerard" in a separate civil proceeding. See id.

Punitive damages are permitted against a municipal official in his individual capacity "if the official's conduct is shown to be 'motivated by evil

24

motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  Novak v. Anaconda Sch. Dist., Sch. Dist. No. 10 Deer Lodge Cnty., No. CV-10-62-BU-RFC, 2011 WL 2472570, at *2 (D. Mont. June 21, 2011) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Punitive damages are also available when a defendant engages in oppressive conduct by either misusing authority or exploiting a plaintiff's weakness.  Id. (quoting Dang v. Cross, 422 F.3d 800, 809-11 (9th Cir. 2005)).  Conduct is oppressive "if done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person."  See Dang, 422 F.3d at 809.  Punitive damages foster "deterrence and punishment over and above that provided by compensatory awards."  See id. at 807 (quoting Smith, 461 U.S. at 54).

In determining the amount of punitive damages to award, "there is no fixed formula for punitive damages, [although] ratios of punitive damages to compensatory damages exceeding single digits are viewed with skepticism."  See Awadan v. Reebok Corp. Headquarter, No. 2:17-CV-01148-KJM-AC, 2019 WL 5783481, at *2 (E.D. Cal. Nov. 6, 2019); see also State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) ("We decline again to impose a bright-line ratio which a punitive damages award cannot exceed.  Our jurisprudence and the

principles it has now established demonstrate, however, that, in practice, few

awards exceeding a single-digit ratio between punitive and compensatory damages,

to a significant degree, will satisfy due process."); Steffens v. Regus Grp., PLC,

No. 08CV1494-LAB BLM, 2013 WL 4499112, at *28 (S.D. Cal. Aug. 19, 2013)

("The Court therefore finds no problem with the 3:1 ratio of punitive to

compensatory damages in this case, and in fact finds it to be in line with other

ratios upheld by the Ninth Circuit.").

Based on the facts alleged in the Third Amended Complaint, the Court

finds that Chief Kealoha abused his position of authority as the chief of police.  In

his capacity of chief of police, Chief Kealoha directed police officers to "make

false statements, fabricate evidence, and falsify reports to implicate Gerard K.

Puana in the theft of their mailbox[.]"  See TAC, ECF No. 307 ¶ 90.  Chief

Kealoha also ordered police officers to surveil Puana twenty-four hours a day.  See

id. ¶ 52.  Plaintiffs further allege that Chief Kealoha staged the theft of the

Kealohas' mailbox, falsely identified Puana as the thief, and repeatedly lied and

made misrepresentations to other police officers during the investigation.  See id.

¶¶ 87, 89, 93.  The Court finds that Chief Kealoha abused his power and authority

as chief of police in reckless indifference to Puana's federally protected rights.  See

Dang, 422 F.3d at 809; Novak, 2011 WL 2472570, at *2.  Consequently, the Court

finds that Plaintiffs are entitled to punitive damages related to the malicious

prosecution claim in the amount of $250,000.

CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiffs' Motion for Default Judgment as to Defendant Louis M. Kealoha be GRANTED.  See Plfs' Mot., ECF No. 460.  The Court recommends that default judgment be entered in favor of Plaintiffs and against Defendant Louis Kealoha in his individual capacity, in the amount of $500,000 ($250,000 in general damages and $250,000 in punitive damages).

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, August 31, 2023.



Wes Reber Porter
United States Magistrate Judge

Puana, et al. v. Kealoha, et al.; CIVIL NO. 16-00659 LEK-WRP; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST LOUIS M. KEALOHA